**Artin DIEDRICH, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C9–86–737.**

Court of Appeals of Minnesota.

Sept. 30, 1986.

Review Denied Nov. 26, 1986.

Martha L. Neese, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Michael B. Miller, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Artin Diedrich sued the State of Minnesota for injuries he suffered while confined at Fergus Falls State Hospital. The trial court dismissed Diedrich's complaint on the grounds that his claims were barred by the Minnesota Tort Claims Act. We reverse and remand for further proceedings.

## FACTS

On December 14, 1981, Artin Diedrich was confined in the psychiatric unit of Fergus Falls State Hospital. Diedrich was injured two days later when he broke a window in his third-floor room and jumped out onto the frozen ground below. Diedrich was later declared mentally ill. His guardian, David Diedrich, then filed a complaint against the State, alleging negligence

1. In failing to adequately inquire of Artin Diedrich as to his suicidal or delusional intention;

2. In failing to acquire an adequate and complete history upon admission of Artin Diedrich;

3. In failing to require that Artin Diedrich be under constant surveillance or one to one supervision;

4. In failing to medicate or otherwise restrain Artin Diedrich so as to repress his delusional activities and ideations;

5. In failing to detect Artin Diedrich's intentions to harm himself when they knew, or should have known, of such intentions;

6. In failing to inspect the room into which Artin Diedrich was to be placed or to cause such an inspection, to determine whether the room was safe;

7. In failing to assure that adequate and competent nursing personnel and other staff members were assigned to provide care and supervision for Artin Diedrich;

8. In failing to sufficiently visit, interview, or otherwise observe Artin Diedrich as required by his known mental condition;

9. In failing to supply sufficient staff members for the number of patients on the psychiatric unit and, specifically, for Artin Diedrich;

10. In allowing Artin Diedrich to have access to means to injure himself;

11. In failing to implement orders to watch for suicidal or delusional ideations;

12. In failing to place Artin Diedrich at a level of care, supervision and control which would call for his maximum protection, including protection from self-inflicted harm;

13. In failing to properly intervene when apprised of the exigency of Artin Diedrich's mental condition and protect Artin Diedrich from self-inflicted injury.

The State contended it was immune from liability under the Minnesota Tort Claims Act and moved to dismiss the complaint for failure to state a claim. The trial court concluded the State was immune under Minn.Stat. § 3.736, subds. 3(b) and (k) (1984), and dismissed the complaint with

prejudice. Diedrich appeals from the judgment of dismissal.[1]

## ISSUE

Did the trial court err in concluding appellant's complaint was barred by the Minnesota Tort Claims Act?

## ANALYSIS

The trial court dismissed Diedrich's complaint under Minn.R.Civ.P. 12.02(5) for failure to state a claim upon which relief can be granted. The only question for review is whether that complaint sets forth a legally sufficient claim for relief; it is immaterial whether or not Diedrich can prove any of the facts alleged. *See Elzie v. Commissioner of Public Safety,* 298 N.W.2d 29, 32 (Minn.1980) (citing *Royal Realty Co. v. Levin,* 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955)).

> A claim is sufficient against a motion to dismiss based on Rule 12.02(5) if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded. To state it another way, under this rule a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.

*Elzie,* 298 N.W.2d at 32 (citing *Northern States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)). If Diedrich's claims are barred because of immunity, then the State was entitled to judgment as a matter of law, and dismissal was proper. *See Ostendorf v. Kenyon,* 347 N.W.2d 834, 836 (Minn.Ct.App.1984).

The trial court first concluded the State was immune from liability under Minn.Stat. § 3.736, subd. 3(b) (1984), which provides that the State and its employees are not liable for any loss caused by "the performance or failure to perform a discretionary duty, whether or not the discretion is abused." The issue, whether allegedly negligent governmental acts by a state hospital constitute an exercise of discretion, is fraught with difficulty because the term 'discretion' has been "subject to enigmatic application and occasional breakdown." *Cairl v. State,* 323 N.W.2d 20, 23 (Minn. 1982) (citing *Larson v. Independent School District # 314, Braham,* 289 N.W.2d 112, 120 (Minn.1979)). The difficulty is compounded by the fact that

> almost every act involves some measure of discretion, and yet undoubtedly not every act of government is entitled to discretionary immunity. As we have said, "[d]iscretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of [governmental] liability." Accordingly we must examine the nature of the decision making process to determine whether discretionary immunity obtains.

*Id.* (citations omitted). In *Ostendorf* this court discussed the purpose and application of discretionary immunity:

> The purpose of the discretionary acts exclusion is that:
>
> > The courts, through the vehicle of negligence action, are not an appropriate forum to review and second guess the acts of government which involve "the exercise of judgment or discretion."
>
> \*     \*     \*     \*     \*     \*
>
> A discretionary act is one which requires a balancing of complex and competing factors at the planning, rather than the operational, stage of development. A ministerial act has been defined as "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed designated facts." At some point according to the Minnesota Supreme Court, discretion is exhausted and duty arises.

*Ostendorf,* 347 N.W.2d at 837 (citations omitted). Minnesota courts have distinguished governmental decisions made on the executive or "planning level" from gov-

---

1. Diedrich first appealed from the order of dismissal. That appeal was dismissed as taken from an unappealable order. *See Leisure Hills of Grand Rapids, Inc. v. Levine,* 366 N.W.2d 302, 303 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. July 11, 1985).

ernmental decisions made on the "operational level." *See Cairl* at 23 n. 2. The former are cloaked with immunity under Section 3.736, subd. 3(b), while the latter are not. Numerous cases apply this distinction.

In *Papenhausen v. Schoen*, 268 N.W.2d 565 (Minn.1978), the plaintiff was assaulted and raped by an escapee from the Anoka State Hospital. She brought suit against the State and a number of individuals, alleging negligence in the decision to transfer the prisoner from the St. Cloud Reformatory to Anoka State Hospital. *See id.* at 567–68. The trial court ordered summary judgment for the State. *See id.* at 568. On appeal the supreme court held that both the parole board and the chief of the psychiatric unit at the state hospital were immune from suit:

> The selection and monitoring of treatment programs, based on the personal examination of patients and their files is in our opinion an indisputably discretionary activity, involving as it does the application of skilled judgment to a wide variety of human conditions.

*Id.* at 572 (citations omitted).

Similarly, in *Cairl v. State*, 323 N.W.2d 20 (Minn.1982), a patient on leave from the Brainerd State Hospital set a fire which destroyed an apartment building and injured several people. *See id.* at 21. The injured parties sued the State, the Ramsey County Welfare Department, and certain State and county employees, alleging they breached their duty to warn of the patient's dangerous propensities. As in *Papenhausen*, the trial court ordered summary judgment because the defendants were immune from liability. *See Cairl* at 21. The supreme court agreed:

> The decision to release [the patient], involving as it does the professional evaluation of such factors as the protection of the public, his physical and psychological needs, the relative suitability of the home environment, and the need to reintegrate him into the community, is precisely the type of governmental decision that discretionary immunity was designed to pro-

tect from tort litigation by after-the-fact review.

*Id.* at 23. Justice Yetka disagreed and stated that the decision whether to release a patient is made at the operational level:

> The case of *White v. United States*, 317 F.2d 13 (4th Cir.1963) is illustrative of this point. There, the court of appeals found the decision to accord freedom of movement to a patient who later committed suicide not to be discretionary. The court stated:
>
> > While the policy embodied in the Veterans Administration Regulations that patients should be allowed the maximum of freedom warranted by their condition is a discretionary decision, the application of that policy to an individual case is not within the category of policy decisions exempted by the statute. The application of that policy to the individual case is an administrative decision at the operational level which if negligently done will make the government liable * * *.
>
> *Id.* at 17.
>
> Similarly, this case also involved the mere application of a general policy to an individual and therefore was not discretionary.

*Id.* at 28 (Yetka, J., dissenting).

Other cases have reversed summary judgment for defendants where some of the allegedly negligent governmental acts were not discretionary in nature. *See, e.g., Ostendorf,* 347 N.W.2d at 836–38 (State's choice of information to place in the Minnesota Driver's Manual was a discretionary act, but summary judgment was improper because plaintiffs had also raised a material issue of fact as to whether the State had a duty to place more or better warning signs on a particular highway); *see also Lyons v. State by Humphrey by Pung,* 366 N.W.2d 621 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. June 27, 1985) (decision to issue laundry pins to prison inmates was discretionary, but summary judgment was improper because injured prisoner also alleged negligent supervision).

In the present case the trial court relied on *Papenhausen* and concluded in its order and memorandum that the State was immune from liability for

> any claim which is based upon the judgmental decisions made by doctors or other personnel in a state hospital which confines the mentally ill. Since such decisions are always discretionary, whether these discretionary duties are performed properly or not performed at all makes no difference as far as the statutory grant [of] immunity is concerned. *The so-called planning-operational distinction is not really applicable to hospital activity, particularly a hospital setting which deals with the mentally ill.*

(Emphasis added). We disagree with the trial court's reasoning in several respects. First, the supreme court's decision in *Papenhausen* did not extend discretionary immunity to every activity related to a mentally ill patient's confinement in a state hospital, nor did the court abandon the planning/operational distinction. The *Papenhausen* court simply held that members of a parole board and the medical chief at a state hospital were immune from liability based on the discretionary decision to transfer a prison inmate to the state hospital for treatment. *See* 268 N.W.2d at 571–72.

█ Second, the facts of this case distinguish it from both *Papenhausen* and *Cairl* because those cases involved injuries to third parties that occurred outside a State facility. *See* 268 N.W.2d at 567; 323 N.W.2d at 22. In contrast, Diedrich was placed in Fergus Falls State Hospital to prevent the very injury he suffered. Diedrich was involuntarily committed under a temporary "hold" order because of the imminent danger that he would injure himself or others if not immediately restrained. *See* Minn.Stat. § 253B.05, subds. 1 and 2(a) (1984). The State thereby assumed a statutory duty to control Diedrich and prevent him from harming himself. Where a duty exists, and it is apparent that action must be taken, discretion is exhausted. *See Ostendorf,* 347 N.W.2d at 838.

█ Finally, the complaint alleged negligence in examination (claims 1, 2, and 5); treatment (claims 4, 8, 11, and 13); supervision (claims 3, 10, and 12); inspection (claim 6); and provision of adequate staff (claims 7 and 9). Diedrich's theory is focused on his direct interaction with employees of the state hospital at the operational level. *See Lyons* at 624. We cannot agree with the trial court that every action taken in relation to a mentally ill patient involves the determination or effectuation of governmental policy. *See Gordon v. Milwaukee County,* 370 N.W.2d 803, 806–07 (Wis.App. 1985). We conclude that the trial court erred in dismissing Diedrich's cause of action under Minn.Stat. § 3.736, subd. 3(b).

█ The Minnesota Tort Claims Act also provides that the State is not liable for any claim predicated on any loss due to

> the usual care and treatment, or lack of care and treatment, of any person at a state hospital or state corrections facility where reasonable use of available appropriations has been made to provide care * * *.

Minn.Stat. § 3.736, subd. 3(k). We have discovered no reported case interpreting this portion of the Minnesota Tort Claims Act.

The trial court in this case concluded that the language of the statute

> broadens the scope of the immunity which is granted under Subdivision 3(b) and *appears to cover all aspects of a patient's care,* rather than simply the discretionary duties which might be employed in such care.

(Emphasis added). The trial court rejected Diedrich's argument that the "reasonable use of available appropriations" language raised an issue as to whether officials at Fergus Falls State Hospital made reasonable use of their resources. The court felt that such administrative decisions are wholly discretionary and viewed *Papenhausen* and *Cairl* as controlling:

> Certainly if there is no liability on the part of the State for the rape of a woman by an escapee from a mental institution

or for injury or death of third persons by a mentally retarded and potentially dangerous youth, there can be no liability on the part of the State for a self-inflicted injury by a mental patient.

In the trial court's view, the statute would bar all tort suits brought by a patient (or prisoner) held in a State facility. We do not agree with this interpretation.

The "usual care or treatment" language appears to be directed specifically at medical malpractice claims. *See* Minn.Stat. § 3.736, subd. 3(k). If the legislature had intended to bar all tort claims by patients and prisoners, much simpler language would have sufficed.[2] Further, Diedrich's complaint was not predicated solely on his treatment; Diedrich had been hospitalized for only two days when he was injured. And our opinion in *Lyons*, which held that a prison inmate could maintain a suit for negligent supervision, is irreconcilable with the trial court's interpretation. *See* 366 N.W.2d at 624.

We also agree with Diedrich that the inclusion of the "reasonable use" language seems to allow the possibility of a suit based on "usual care or treatment," given the proper facts. *See* Minn.Stat. § 3.736, subd. 3(k). Claims 3, 7, 10, and 12 can be construed to include such a cause of action.

We therefore conclude that the trial court should not have dismissed the complaint at this early stage in the litigation. We believe Diedrich is entitled to the opportunity to develop any relevant facts through discovery. We do not express an opinion on the merits of Diedrich's claims and hold only that this complaint was sufficient as against a motion to dismiss for failure to state a claim. *See Elzie*, 298 N.W.2d at 32.

## DECISION

The trial court erred in dismissing the action on a Rule 12.02(5) motion.

Reversed and remanded.

2. We note that there may be certain constitutional impediments on equal protection grounds to such a statute. *See Gordon* at 808.