**Julie ENGLE, Trustee for the next of kin of Lawrence B. Engle, Respondent,**

v.

**HENNEPIN COUNTY, d.b.a. Hennepin County Medical Center, et al., Appellants.**

No. C4–87–557.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Denied Nov. 18, 1987.

Thomas J. Johnson, Hennepin Co. Atty., George H. Elwell, Sr. Asst. Co. Atty., Minneapolis, for appellants.

Thomas F. Van Horn, St. Paul, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and MULALLY,* JJ.

## OPINION

SEDGWICK, Judge.

Lawrence Engle was killed when his car rammed a retaining wall at the Metropoli-

tan Medical Center in Minneapolis on February 1, 1984. Engle's trustee sued Hennepin County Medical Center and certain employees of the center, alleging the medical center's negligence caused Lawrence's death. The medical center moved for summary judgment on the basis of immunity granted under either the Minnesota Commitment Act, Minn.Stat. § 253B.23 (1982), or Minn.Stat. § 466.03, subd. 6 (1982), protecting a municipality from liability for its discretionary acts. The trial court determined that the county was not entitled to limited tort immunity. The county appeals denial of its motion. We reverse.

## FACTS

Engle used speed and/or crank on Saturday, January 28 and became increasingly jumpy and paranoid. He thought people were trying to break into his apartment and wanted to kill him. On the evening of January 30, Engle entered Hennepin County Alcohol Receiving Center (ARC). ARC handles detoxification of drug users and commonly administers valium. Engle suffered a valium reaction and his paranoia that ARC patients were intent on "knifing" him was unmanageable. Engle was transported by ambulance to the Crisis Intervention Center (CIC) for further evaluation.

Michael Dickel, a social worker case aide at CIC interviewed Engle. Dickel, whose job includes answering phones for suicide prevention, crisis intervention, and child abuse; interviewing patients, making assessments, doing brief counseling and therapy as appropriate; record-keeping; and arranging hospitalizations, was aware of Engle's paranoia and drug use, in addition to Engle's 1979 hospitalization at Golden Valley for substance abuse. Dickel was unsure if Engle's paranoia stemmed from drugs or mental illness. He believed an inpatient psychiatric evaluation was required and, because Engle agreed to hospitalization, Dickel made arrangements for Engle, as a Group Health subscriber, to enter Fairview-St. Mary's. Dickel testified in his deposition that Engle denied any

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

suicidal or homicidal thoughts and that he focused solely on the idea that others were out to kill him. Dickel did not believe there was justification for a 72 hour emergency hold to be placed on Engle since he was not a serious threat to himself or others.

Engle called his wife, Bridget, and requested that she bring clothes to him. When she arrived at CIC, he met the car and asked her to drive him to Fairview. The two talked while Bridget unsuccessfully tried to find Fairview and Bridget said the conversation was normal. When she couldn't find the hospital, Lawrence took the wheel, and his personality immediately changed. "Just like Jekyll and Hyde completely," Bridget testified. He raved about how he fooled the guys at CIC. He recklessly drove around for 4 hours and then dropped his wife off near their home. Lawrence continued his wanderings for nearly 24 hours, which he interrupted several times to "talk crazy" to his wife over the phone. Bridget Engle met him again about 12:30 p.m. on February 1.

> We drove around for about two and a half hours and then he started telling me that he was Jesus Christ and they were going to crucify him and that I should be with [him] and that we would die together, and all this kind of stuff.

Several hours after he released Bridget to pick up her daughter at school, Lawrence was killed in the car crash.

### ISSUES

1. Is a denial of summary judgment on a claim of immunity an appealable order?

2. Should Hennepin County have been granted summary judgment on the basis of limited governmental immunity?

### ANALYSIS

In the case before us both parties have moved for summary judgment. There are no disputed questions of fact. The only question is whether Dickel's decision was entitled to discretionary immunity, which is a question of law. *Ostendorf v. Kenyon*, 347 N.W.2d 834 (Minn.Ct.App.1984). Because we believe immunity applies as a matter of law, we grant discretionary re-

view pursuant to Minn.R.Civ.App.P. Rule 105.

Minn.Stat. § 466.02 states governmental units are liable for their torts, and those of their employees, unless an exception is satisfied. The exception claimed here is "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6.

We believe the facts here are so closely analogous to those of *Cairl v. State*, 323 N.W.2d 20 (Minn.1982), as to mandate application of the holding of that case. In *Cairl*, the decision to grant holiday release to a juvenile under court commitment was made by a community re-entry facilitator. The decision was made notwithstanding the fact that a decision by the hospital to commence treatment of the juvenile for his fire-setting proclivities had not yet begun. As a result of his release, a fourplex was destroyed by fire, killing one child and seriously injuring another.

In the present case, the decision to permit an ostensibly cooperative patient to be driven by his wife to a private hospital was made by Dickel, a mental health worker whose job was to make such assessments. The re-entry facilitator in *Cairl*, and Dickel here, are not making decisions on the "executive, planning level of government" as contemplated by *Larson v. Independent School District No. 314*, 289 N.W.2d 112, 120 (Minn.1979). However, the nature of the decision is certainly not ministerial. Ministerial acts are "absolute, certain and imperative involving merely the execution of a specific duty arising from fixed designated facts." *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937).

As the supreme court said in *Cairl:*

> The decision to release [the patient], involving as it does the professional evaluation of such factors as the protection of the public, his physical and psychological needs, the relative suitability of the home environment, and the need to reintegrate him into the community, is precisely the type of governmental decision that discretionary immunity was designed to pro-

tect from tort litigation by after-the-fact review.

*Id.* at 23.

Although the last two considerations apply only to the *Cairl* facts, Dickel was hired by the county to make professional evaluations in crisis "walk-in" or hot-line situations, and to make judgments on these evaluations. He did that in this case. He reviewed the history and observed the patient. He determined that an in-patient psychiatric evaluation was necessary, and arranged for Engle's admission to a private hospital because Engle had health insurance coverage. He testified there was no talk of suicide and there was no indication that suicide was part of ARC's difficulty in managing the patient. The nature of Dickel's decision is no different than that made in *Cairl.*

The *Cairl* court pointed out in a footnote that

> a significant consideration in determining the applicability of discretionary immunity is the extent to which the threat of liability would impair the effective performance of the governmental act complained of. If release decisions were exposed to the threat of liability, those individuals charged with rendering those decisions would likely become unduly responsive to one consideration—the cost of liability.

*Id.* n. 3 (citations omitted). The converse is also true. The decision to hold a patient against his will must not be unduly responsive to consideration of the cost of liability.

Because Engle was never committed, we do not need to discuss the Minnesota Commitment Act, Minn.Stat. § 253B.23. We believe the trial court erred in failing to grant summary judgment for the county on the basis of Minn.Stat. § 466.03, subd. 6 (1983).

### DECISION

Whether a decision by the state is discretionary or ministerial is a question of law. Because there were no issues of material fact, summary judgment should have been granted.

Reversed and remanded for entry of judgment in favor of appellants.