David and Gayle JOHNSON, as Trustee for the Heirs and Next-of-Kin of Melissa Noelle Johnson, Appellants,

v.

STATE of Minnesota and its Agents, Orville Pung, et al., Hennepin County and its Officers, Employees and Agents, Thomas Lamb, et al., and 180 Degrees, Inc., Respondents.

No. C3–95–532.

Court of Appeals of Minnesota.

Aug. 22, 1995.

Review Granted Oct. 19, 1995.

Michael O. Freeman, Hennepin County Atty., Toni A. Beitz, Sr. Asst. County Atty., Minneapolis, for Hennepin County, et al.

Patrick D. Reilly, Law Offices of Patrick D. Reilly, Minneapolis, for 180 Degrees, Inc.

Considered and decided by CRIPPEN, P.J., and HUSPENI and NORTON, JJ.

## OPINION

CRIPPEN, Judge.

A former prisoner in the State of Minnesota's supervised release program raped and murdered appellants' decedent, Melissa Johnson. Appellants sued respondents for wrongful death, but the trial court granted dismissal motions, concluding that no relief could be granted on appellants' claims because the respondent state and county and their agents, officers and employees were immune from suit. The court also concluded that none of the respondents owed a duty to Melissa Johnson. We affirm on certain conduct of respondents but on other conduct we reverse and remand.

## FACTS

At approximately 12:00 noon on Thursday, July 4, 1991, the Minnesota State Correctional Facility at St. Cloud released prisoner Scott Edward Stewart into the State of Minnesota's supervised release program. Thomas Lamb, an agent of Hennepin County, was assigned as Stewart's supervising agent.

Despite Stewart's history of prior escapes and criminal sexual conduct, he was allowed to travel to Minneapolis without escort, and he was instructed to report directly to 180 Degrees, Inc., a nonprofit minimum security facility licensed by the Minnesota Department of Corrections. Stewart was instructed to telephone Lamb on the first working day after his release.

Stewart did not report directly to 180 Degrees, nor did he telephone Lamb. Instead, he purchased a knife on Friday, July 5, and went on a four-day crime spree, resulting in the rape and murder of Melissa Johnson

Susan D. Hall, Scott M. Rusert, Cosgrove, Flynn & Gaskins, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., James Alexander, Asst. Atty. Gen., St. Paul, for State, et al.

between 11:30 p.m. on Monday July 8 and 5:00 a.m. on Tuesday, July 9.[1]

Agents at the St. Cloud facility did not contact 180 Degrees on July 5 to find out whether Stewart had arrived. Nor did 180 Degrees contact the corrections facility to find out why Stewart had not arrived. Neither Lamb nor any other Hennepin County employee contacted 180 Degrees or the St. Cloud facility on July 5 to determine why Stewart had not telephoned Lamb as instructed.[2] Appellants allege the state, county, and 180 Degrees were negligent in shaping and implementing the terms of Stewart's release to 180 Degrees.

## ISSUES

1. Did the trial court err by concluding that the state and county were immune from suit?

2. Did the court err by concluding that respondents owed no duty to Melissa Johnson?

## ANALYSIS

### Standard of review

The trial court dismissed appellants' complaint for failure to state a claim upon which relief could be granted. *See* Minn.R.Civ.P. 12.02(e). On appeal, the respondent county argues that the trial court's order should be considered as an order for summary judgment.

■ When a party brings a Rule 12 motion but the court considers matters outside the pleadings, we may consider the motion as one for summary judgment under Minn. R.Civ.P. 56. *Koelln v. Nexus Residential Treatment Facility*, 494 N.W.2d 914, 918 (Minn.App.1993), *pet. for rev. denied* (Minn. Mar. 22, 1993). Yet, conversion to a Rule 56 motion is not necessary when the "court only considers an authenticated copy of a key document upon which * * * the complaint is premised." 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 12.9, at 87 (Supp.1995).

In this case, the authenticated copy of Stewart's supervised release agreement is a "key" document. There is no indication that the trial court considered any documents other than the pleadings and the supervised release agreement when deciding respondents' motions to dismiss. The court stated that it was treating respondents' motions under Rule 12. As a result, we will consider whether the complaint sets forth a legally sufficient claim for relief, which is the standard of review applicable to a dismissal for failure to state a claim upon which relief may be granted. *Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 25 (Minn.App.1993), *pet. for rev. denied* (Minn. Nov. 16, 1993).

### I. Immunity

#### Governmental discretionary immunity

■ The state is immune from tort liability when its alleged duty is "discretionary." Minn.Stat. § 3.736, subd. 3(b) (1990). The county enjoys like immunity. Minn.Stat. § 466.03, subd. 6 (1990). Although any governmental function may involve exercise of some discretion, immunity extends to conduct, usually at a planning level, that involves a balancing of policy considerations. *Rico v. State*, 472 N.W.2d 100, 104 (Minn.1991). Policy considerations may be political, economic or social. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 720 (Minn.1988). The basis for discretionary function immunity is that the judiciary should not second-guess "certain policy-making activities that are legislative or executive in nature." *Id.* at 718. The government has the burden of proving its immunity. *Id.* at 722 n. 6.

■ The state and county remain liable when their duty does not involve the exercise of discretion but is "ministerial" in nature. *See Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn.1978). Ministerial acts are "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Koelln*, 494 N.W.2d at 919 (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937). Most often, implementation decisions involve

---

1. A jury convicted Stewart on several counts of murder, and he was sentenced to life in prison without the possibility of release.

2. Apparently, Lamb was on vacation on July 5.

only the application of an established policy to a particular fact situation and are not protected. *Rico,* 472 N.W.2d at 104. Matters of professional or scientific judgment have been contrasted with decisions involving a balancing of policy considerations. *Nusbaum,* 422 N.W.2d at 720.

### Failure to provide escort

█ Appellants claim that respondents were negligent by deciding to release Stewart to 180 Degrees without providing him with an escort.[3]

In *Pletan v. Gaines,* 494 N.W.2d 38 (Minn. 1992), the plaintiffs whose child was killed walking home from school alleged that the school should have been responsible for making sure that children boarded their buses. The court concluded that the school's decision to delegate to students the responsibility for boarding the bus was protected by discretionary function immunity because the decision involved the consideration of "many factors, including safety, cost, and the educational goal of instilling a sense of personal responsibility in the students." *Pletan,* 494 N.W.2d at 44.

We conclude that the state's decision to delegate to Stewart the responsibility for his own transportation was protected by discretionary function immunity, because the decision involved the consideration of many factors, including safety, cost, and rehabilitative goals. *See Koelln,* 494 N.W.2d at 919–20 (recognizing precedents for immunity in placement of inmates and patients "and decisions regarding how much liberty to afford them").

We also note that legislation enacted in 1992, after Stewart's release, requires that an agent from the Department of Corrections escort inmates who are placed on supervised release to halfway houses or residential community programs. Minn.Stat. § 244.05, subd. 1c (1992) (added by 1992 Minn.Laws ch. 571, art. 11, § 3). This enactment suggests that the decision whether to require escorts for released prisoners is a legislative decision that should not be second-guessed by the judiciary.

### Failure to follow up after release

█ Appellants argue that the state and county's failure to determine whether Stewart had arrived at 180 Degrees and the failure to immediately issue a warrant were not protected discretionary functions. These contentions have merit.

The state's policy commitment was stated in Stewart's release agreement. In the event Stewart failed to report to 180 Degrees as directed, the agreement specified that a fugitive warrant "shall be issued immediately."[4] It is undisputed that the state was aware of Stewart's release and the requirement that immediate action be taken upon his failure to arrive at 180 Degrees. But a fugitive warrant was not issued until July 8.

The identical mandate, that a fugitive warrant "shall be issued immediately," was provided in the event of Stewart's failure to make his first appointment with his supervising agent, or to call to explain his failure. And Department rules provided a role for county agents in formulating the release agreement. *See* Minn.R. 2940.1300 (1991) (supervising agent participates in developing final recommendations for release plans).[5] Moreover, the warrant imperative was directed specifically at the county in a Department of Corrections rule that a fugitive warrant "shall immediately be issued" by the county in the event a prisoner on supervised release fails to report to a program when directed or to contact the supervising agent within 24 hours of the prisoner's release.

---

3. Appellants do not claim that respondents were negligent in deciding to release Stewart into the supervised release program. In fact, supervised release pursuant to Minn.Stat. § 244.05 (1990) was mandated by law because Stewart had served two-thirds of his determinate sentence. Minn.Stat. § 244.04 (1990).

4. The state had the authority to issue a warrant for Stewart, had Lamb or another county employee reported Stewart's violation of his supervised release. Minn.R. 2940.3200 (1991).

5. At a later stage in the proceedings the county may be able to disprove appellants' allegations and prove its claim of immunity based upon additional facts submitted into the record. But at this stage, assuming the facts alleged by appellants to be true, the county has not established its claim of immunity.

Department of Corrections Rule 4–115.9(11) (1991). The county failed to determine why Stewart had not reported to Lamb as required and/or failed to act after receiving notification that Stewart had not arrived at 180 Degrees. This conduct, like that of state agents, is relevant to the fact that no fugitive warrant was issued until July 8. Causation has not been put in issue at this stage of the proceedings, and the present record does not preclude a finding that timely conduct by agents of the state and the county would have prevented the murder of Melissa Johnson.

In *S.L.D. v. Kranz*, 498 N.W.2d 47 (Minn. App.1993), a county social worker's failure to communicate information to his supervisor allegedly resulted in the continued sexual abuse of minors. The court concluded that discretionary function immunity would not protect the employee's failure to communicate the information to fellow employees, because such failure to communicate "d[id] not involve planning decisions or the balancing of policy objectives." *Id.* at 55; *see also Cairl v. State*, 323 N.W.2d 20, 23 n. 1 (Minn.1982) (distinguishing discretionary decision to release from the negligent implementation of that decision) (citing *Lloyd v. State*, 251 N.W.2d 551, 557 (Iowa 1977)).

Similarly, we conclude that the failure to communicate about Stewart's whereabouts after his release and the failure to issue a warrant did not involve "planning decisions or the balancing of policy objectives." Once the supervised release plan was issued, requiring "immediate" action if Stewart failed to arrive at 180 Degrees, the failure to act appropriately was a ministerial failure, unprotected by discretionary function immunity.[6]

**Official immunity**

██ We also examine the conduct of state and county agents under the doctrine of official immunity, which differs at least in purpose from the doctrine of discretionary function immunity. *Nusbaum*, 422 N.W.2d at 718 n. 4. Discretionary function immunity is "designed to preserve the separation of powers," whereas official immunity is "primarily intended to insure that the threat of potential personal liability does not unduly inhibit the exercise of discretion required of public officials in the discharge of their duties." *Holmquist v. State*, 425 N.W.2d 230, 233, n. 1 (Minn.1988).

██ Official immunity applies to conduct at the operational level rather than the policy-making level, and to actions that are not ministerial, but involve the exercise of discretion. *Pletan*, 494 N.W.2d at 40. While the analysis of an official immunity claim begins with the conduct of a specific individual, the analysis is similar and in this case leads to a similar result.

██ Just as observed regarding governmental immunity, ministerial duties are unprotected by the doctrine of official immunity. *Id.* For either immunity doctrine, ministerial duties are defined as "absolute, certain and imperative." *Rico*, 472 N.W.2d at 107 (discussing official immunity; quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)); *see Koelln*, 494 N.W.2d at 919 (quoting same authority for governmental immunity discussion).

██ When an official is immune, the municipality may also be immune under the doctrine of vicarious official immunity. *Pletan*, 494 N.W.2d at 43; *see Olson v. Ramsey County*, 509 N.W.2d 368, 372 (Minn.1993) (holding county, as employer, entitled to share in social worker's official immunity, to avoid "the focus of a stifling attention on the social worker's performance, to the serious detriment of that performance").

██ The decision to allow Stewart to travel unescorted was protected by official immunity and vicarious official immunity because the state was required to determine how dangerous Stewart was, the importance of an escort, the possibility of other alternatives, and the extent of necessary supervi-

---

**6.** Appellants also claim that a correctional counselor at MCF–St. Cloud heard Stewart make threats upon several occasions to the effect that "the next time they won't have to worry about catching me because I'm going to kill the f——ing bit—" The counselor's failure to communicate these threats to appropriate personnel would also constitute *S.L.D.*-type negligence unprotected by discretionary function immunity.

sion. *See Pletan,* 494 N.W.2d at 41 (examining factors to be weighed when determining whether official immunity was applicable to officer's decision to engage in high-speed chase). The official immunity principle "protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Rico,* 472 N.W.2d at 106–07 (citing *Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn.1988).[7]

 But official immunity does not protect the failure of state and county agents to make sure that Stewart arrived at 180 Degrees and reported to his agent, and their failure to timely issue a warrant. In *S.L.D.,* the court examined the aim to prevent deterring an official from performing his statutory duties. The court concluded that imposing liability on a social worker for failing to communicate information accurately would not deter the employee from carrying out his or her duties. *S.L.D.,* 498 N.W.2d at 54. Similarly, in this case, requiring the state and county to communicate about Stewart's whereabouts would not deter those governmental entities from performing their duties.

**Quasi-judicial immunity**

 The respondent state argues that its failure to follow up on Stewart's release is protected by the doctrine of quasi-judicial immunity. The purpose of quasi-judicial immunity is to protect the judicial process. *Sloper v. Dodge,* 426 N.W.2d 478, 479 (Minn. App.1988). "Immunity exists to free government officials from the burdensome consequences of litigation." *Dziubak v. Mott,* 503 N.W.2d 771, 776 (Minn.1993). The doctrine has provided immunity to quasi-judicial officers or participants in the judicial system such as public defenders (*Dziubak*), guardians ad litem (*Tindell v. Rogosheske,* 428 N.W.2d 386, 387 (Minn.1988)), and court-appointed physicians and psychiatrists (*Linder v. Foster,* 209 Minn. 43, 48, 295 N.W. 299, 301 (1940)). We conclude that the doctrine is not

applicable to the failure to communicate concerning Stewart's whereabouts, or the failure to timely request and issue a warrant.

## II. Duty to Melissa Johnson

 The trial court also dismissed appellants' action on the rationale that none of the respondents had a duty to Melissa Johnson. Whether a duty is owed is generally a question of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

 As a rule, a person has no duty to control the conduct of another person to prevent that person from causing physical injury to others, absent a special relationship. *Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1984); Restatement (Second) of Torts § 315 (1965). A special relationship exists where a person "takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled." Restatement (Second) of Torts § 319 (1965); *see Delgado,* 289 N.W.2d at 483–84.

 Respondents in this case had a duty to control Stewart and determine his whereabouts, absent his failure to arrive at 180 Degrees or to telephone Lamb as instructed. Furthermore, the state or county had a duty to immediately issue a warrant upon Stewart's violation of his supervised release plan.

In *Lundgren v. Fultz,* 354 N.W.2d 25, 27 (Minn.1984), the court stated that "[i]mplicit in the duty to control is the ability to control." Here, the state continued to have a duty to control Stewart. The supervised release program is established by the state. Minn.Stat. § 244.05 (1990). Stewart's supervised release agreement stated: "The supervised releasee/parolee upon being released shall remain in the legal custody and under control of the Minnesota Department of Corrections subject to rules and regulations of conditions of release." The state had legal custody and control of Stewart and the duty and ability to exercise control over him.

---

7. "Malice" and "wilful" are synonymous, and are defined as an intentional commission of a wrongful act, "without legal justification or excuse, or, otherwise stated, the willful violation of

a known right." *Rico,* 472 N.W.2d at 107. Appellants do not appear to allege malice by respondents in this case.

The county also had a special relationship with Stewart and the means and instrumentality of controlling his actions. Stewart was released to the community, and Lamb's responsibility was to supervise Stewart. Minn.R. 2940.0100, subpt. 31, 32 (1991); *see* Department of Corrections Rule 4–113.1(f) (1991) (supervising agent responsible for releasee's case until discharged, revoked or transferred).

180 Degrees also violated a duty by failing to call the state or county when Stewart did not arrive at its facility on July 4 or 5 as directed. Stewart was required to report to and reside at 180 Degrees after he was released on July 4. 180 Degrees had the duty to "notify appropriate probation officers, parole officers, and other relevant officials as soon as it has been determined that a resident is missing." Minn.R. 2920.5900 D (1991). To the extent this notice relates to Stewart's liberties, 180 Degrees had control over him.

We also conclude that Stewart's actions upon his release from the St. Cloud facility were foreseeable. The question of foreseeability is ordinarily a question of law. *Larson,* 373 N.W.2d at 289. In light of Stewart's past record, his threats overheard by a correctional counselor at the facility, and his release on a major holiday, it was foreseeable that he would attempt to escape and engage in criminal sexual conduct.

### DECISION

We affirm the trial court's decision that the state and county are entitled to immunity for their decision to allow Scott Stewart to travel unescorted. But we reverse the court's decision that the state and county were immune from liability for their failure to determine Stewart's whereabouts and their failure to immediately issue a warrant when Stewart did not arrive at 180 Degrees as instructed. All respondents had a duty and means to control Stewart. The trial court erred by dismissing appellants' complaint for failure to state a claim upon which relief could be granted.

**Affirmed in part and reversed and remanded in part.**