**Michelle Denais TERWILLIGER, as trustee for the heirs and next of kin of Patrick Denais, decedent, Appellant,**

v.

**HENNEPIN COUNTY, d/b/a Hennepin County Mental Health Center, et al., Respondents.**

No. CX–95–1872.

Court of Appeals of Minnesota.

Jan. 30, 1996.

Review Granted April 1, 1996.

Mark Hallberg, Mackenzie & Hallberg, P.A., Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Attorney, Michael B. Miller, Sr. Asst. County Attorney, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., TOUSSAINT, C.J., and FORSBERG, J.*

## OPINION

PARKER, Judge.

The family of the deceased Patrick Denais brought an action against Hennepin County Mental Health Center (HCMHC) alleging negligent psychiatric treatment and care, resulting in Mr. Denais's death by suicide. The trial court granted the county's motion to dismiss based on discretionary governmental immunity. We reverse and remand.

## FACTS

Patrick Denais began receiving medical care and treatment, including psychiatric consultation and counseling, from Hennepin County in February 1993 for a diagnosis of depression. In July 1993, his depression became more severe. Experiencing suicidal ideation, he contacted the Hennepin County Crisis Intervention Center. A social worker referred him to Dr. Robert Werner, a psychiatrist employed by Hennepin Faculty Associates, an independent contractor with Hennepin County. Dr. Werner diagnosed situational depression with anxiety, but did not hospitalize Denais. Instead, he prescribed medication and referred Denais back to the HCMHC for further care and treatment.

The next day, July 21, 1993, employees of HCMHC continued to treat Denais. A social worker noted that Denais's condition seemed to be worsening and referred him to Dr. Keith Horton, a physician employed by Hen-

nepin County. Horton examined Denais on July 22. Horton agreed that Denais suffered from depression and modified the medication treatment prescribed by Dr. Werner. Horton determined that it would be another month before he should see Denais, who was receiving ongoing counseling from a social worker at HCMHC.

On July 26, Denais returned to HCMHC for counseling with his social worker. Although he had been taking his medication, he still felt anxious and depressed. He missed an appointment with his social worker on August 3, and committed suicide on August 8, 1993.

Mr. Denais's family brought this lawsuit alleging that respondents negligently implemented a treatment plan that did not comply with accepted medical or psychiatric standards of practice under the circumstances. They allege that Denais needed a more intensive treatment plan with hospitalization or closer supervision and monitoring. The trial court dismissed the family's complaint for failure to state a claim upon which relief can be granted. Denais's family appeals.

## ISSUE

Does the discretionary immunity provision of Minn.Stat. § 466.03, subd. 6 (1994), provide county mental health care workers absolute immunity from tort liability with respect to the manner in which they administer treatment to an individual once the decision to treat has been made?

## DISCUSSION

### I.

▉ When considering a motion to dismiss for failure to state a claim under Minn. R. Civ. P. 12.02(e),

> [t]he only question for review is whether the complaint sets forth a legally sufficient claim for relief; it is immaterial whether or not [plaintiff] can prove any of the facts alleged.

art. VI, § 10.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

*Diedrich v. State,* 393 N.W.2d 677, 680 (Minn.App.1986) (citing *Elzie v. Comm'r of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980)).

The trustee's complaint alleges:

A. Defendant Hennepin County failed to hospitalize Patrick Denais on occasions when it knew or should have known that Patrick Denais was profoundly depressed and suicidal;

B. Defendant Hennepin County, acting through its agent and employees, failed to properly monitor Patrick Denais' condition after he was placed on medications and failed to provide appropriate support of therapy and counseling to treat Patrick Denais' severe depression and suicide potential;

C. Defendants acted or failed to act in other inappropriate [or appropriate] ways.

## II.

Relying on Minn.Stat. § 466.03, subd. 6, the trial judge concluded that "immunity applies as a matter of law." He reasoned that Minn.Stat. § 466.02 provides that governmental units are liable for their torts, and those of their employees, unless an exception is satisfied. In this case, the judge relied upon Minn.Stat. § 466.03, subd. 6, which exempts

[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

In support of his decision, the judge cited *Cairl v. State,* 323 N.W.2d 20 (Minn.1982), in which a juvenile with a proclivity to set fires, while on leave from a state treatment facility, set fire to an apartment building, killing one person and seriously injuring another. The *Cairl* court stated:

The decision to release [the patient], involving as it does the professional evaluation of such factors as the protection of the public, his physical and psychological needs, the relative suitability of the home environment, and the need to reintegrate him into the community, is precisely the type of governmental decision that discretionary immunity was designed to protect

from tort litigation by after-the-fact review.

*Cairl,* 323 N.W.2d at 24.

The judge also relied on *Engle v. Hennepin County,* 412 N.W.2d 364 (Minn.App. 1987), *review denied* (Minn. Nov. 18, 1987). In *Engle,* a man had arrived at the Hennepin County Alcohol Receiving Center experiencing drug-induced delusions. After suffering a reaction to the Valium he was administered, he was transferred to the Hennepin County Crisis Intervention Center. A social worker evaluated him and, rather than holding him there, permitted him to be driven by his wife to a hospital. He was killed shortly thereafter when he ran his car into a retaining wall. This court held that the county was immune from suit:

If release decisions were exposed to the threat of liability, those individuals charged with rendering those decisions would likely become unduly responsive to one consideration—the cost of liability.

*Engle,* 412 N.W.2d at 367 (quoting *Cairl,* 323 N.W.2d at 23 n. 3 (citations omitted)).

## III.

At the outset, we note that the case law on discretionary governmental immunity provides few, if any, bright lines. In *Cairl,* the Minnesota Supreme Court commented on the difficulties surrounding the issue of discretionary immunity:

The problem, of course, is in determining whether a particular act of government involves the exercise of discretion. As this court recently stated, that determination "has been subject to enigmatic application and occasional breakdown." *Larson v. Independent Sch. Dist. No. 314,* 289 N.W.2d 112, 120 (Minn.1979). The problem is compounded by the fact that almost every act involves some measure of discretion, and yet undoubtedly not every act of government is entitled to discretionary immunity. As we have said, "[d]iscretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of [governmental] liability." *Id.* at 121. *Accordingly we must examine the nature of the decisionmaking process to*

*determine whether discretionary immunity obtains. Id.* at 120.

*Cairl,* 323 N.W.2d at 23 (emphasis added).

Six years later, in *Nusbaum v. Blue Earth County,* 422 N.W.2d 713 (Minn.1988), the supreme court again attempted to provide some clear guidelines on the issue. In that case, the court held that discretionary immunity did not apply where plaintiff alleged improper placement of a speed zone sign. The court reasoned:

> To challenge the placement of this sign does not challenge any policy itself or infringe on a regulatory agency's policy-based criteria for signing roadways.

*Nusbaum,* 422 N.W.2d at 723. Rather, the placement of the signs involved implementation of established policy. *See id.*

The *Nusbaum* court began its analysis by explaining the rationale behind the general principle of discretionary governmental immunity:

> The major underpinnings for the discretionary function exception to governmental tort liability rest in the notion that the judicial branch of government should not, through the medium of tort actions, second-guess certain *policy-making activities that are legislative or executive in nature.* "[J]udicial review of major executive policies for 'negligence' or wrongfulness" could "disrupt the balanced separation of powers of the three branches of government."

*Nusbaum,* 422 N.W.2d at 718 (quoting Prosser and Keeton on Torts Sec. 131 at 1039 (5th ed.1984)) (emphasis added). Acknowledging the discretion inherent in nearly every act, the court stated:

> [E]ach case must be judged in a fashion which focuses on whether the legislature intended to immunize the particular government activity that is the subject of the tort action.

*Id.* at 719.

Next, the *Nusbaum* court explained that in applying the discretionary function exception under Minn.Stat. § 466.03, subd. 6, the court has "drawn a distinction between conduct at a planning level (protected) and conduct at an operational level (unprotected)." *Id.* The court mentioned two earlier decisions in its

discussion of this distinction. *Id.* For example, in *Silver v. City of Minneapolis,* 284 Minn. 266, 170 N.W.2d 206 (1969), the court had determined that deployment of police to control civil unrest was a policy decision protected by the discretionary function exception. *Id.* at 271, 170 N.W.2d at 209. Later, in *Hansen v. City of St. Paul,* 298 Minn. 205, 214 N.W.2d 346 (1974), the court determined that the decision of city officials to wait until after lunch to capture two dangerous, roaming dogs was operational and therefore not protected. *Id.* at 212, 214 N.W.2d at 350.

The *Nusbaum* court summarized *Cairl* in the following manner:

> In *Cairl,* the court was faced with the issue of whether the discretionary function exception applied to a decision by state mental health officials to release a mentally retarded youth with dangerous propensities on a temporary furlough from a mental hospital. 323 N.W.2d at 22. Suit was filed against the state after the youth set a fire during his temporary release which killed one person and severely burned another. Examining the decision "in light of the planning-operational distinction," *id.* at 23 n. 2, we held that the release decision was protected by the discretionary function exception. Although we described the release decision as a professional evaluation of certain factors, the essence of our holding was based on this state's policy favoring open-door treatment of mentally ill patients. We noted that imposition of liability for releasing mental patients would substantially interfere with the execution of this open-door policy. *Id.* at 23 n. 3. Thus, the *policy-based* decision to release the youth was protected as discretionary.

*Nusbaum,* 422 N.W.2d at 719 (emphasis added). Finally, *Nusbaum* warned about the "imprecision of merely attaching labels such as 'discretionary,' 'ministerial,' 'planning level,' and 'operational level' to certain conduct in a conclusory manner." *Id.* (citing *Cairl,* 323 N.W.2d at 23 n. 2). Instead, the court stated:

> [A] court should always have at the forefront the idea that the exception seeks to

protect policy-based decisions and prevent the impairment of effective government. *Id.*

This case is similar to *Nusbaum* because, rather than challenging the policy itself, appellant challenges the implementation of the policy. *See Olson v. Ramsey County,* 509 N.W.2d 368 (Minn.1993) (holding that although formulation of a social worker's case plan was protected by official immunity, implementation of the plan was protected neither by official immunity nor by discretionary immunity). Although the decision to provide mental health services to individuals may be, at its broadest level, a policy-based decision, treatment itself does not often involve policy considerations. As *Nusbaum* indicates, in such a case where "there is no overriding policy consideration such as was present in *Cairl,*" discretionary immunity will not apply. *Nusbaum,* 422 N.W.2d at 724.

In this case, the question of whether HCMHC employees were negligent in their treatment and care of Patrick Denais involves a question of professional or scientific judgment. In cases involving such judgment, the *Nusbaum* court stated that the discretionary immunity exception applies "only where the decision involve[s] a balancing of policy objectives rather than merely a professional or scientific judgment." *Id.* at 719–20 (discussing *Griffin v. United States,* 500 F.2d 1059 (3rd Cir.1974) (holding that discretionary immunity did not apply to the decision of the government in approving the use of a polio vaccine which did not meet specified regulations and ultimately caused severe injuries to plaintiff)).

■ The *Nusbaum* court quoted with approval the following from a Second Circuit case:

The fact that judgments of governmental officials occur in areas requiring professional expert evaluation does not necessarily remove those judgments from the examination of courts by classifying them as discretionary functions * * *.

*Id.* at 720 (quoting *Hendry v. United States,* 418 F.2d 774, 783 (2d Cir.1969)). Thus, resolution of the instant case involves a determination of "whether the challenged governmental action involves a balancing of policy with political, economic, and social considerations or, alternatively, whether it involved merely a professional or scientific judgment." *Nusbaum,* 422 N.W.2d at 720.

The protection afforded by the discretionary function exception does not extend to professional or scientific judgment where such judgment does not involve a balancing of policy objectives.

*Id.* at 722 (citing *Blessing v. United States,* 447 F.Supp. 1160, 1185 (E.D.Pa.1978)). As the supreme court warned, we must be careful not to decide such cases based on broad generalizations about the nature of decisions made by public professionals. *Nusbaum,* 422 N.W.2d at 719. Reliance on such generalizations runs the risk of granting immunity to decisions that are not policy-based, and is inconsistent with the idea that discretionary immunity is a narrow exception to the general rule that government will be liable for its torts. *See Cairl,* 323 N.W.2d at 23; *Larson,* 289 N.W.2d at 120.

In *Olson,* Justice Simonett succinctly observed that "[g]overnmental immunity protects against not only right decisions with unfortunate results but wrong decisions with bad results." *Olson,* 509 N.W.2d at 372. Under *Nusbaum,* a holding of immunity for all decisions made by mental health care workers would require an inference that the legislature intended to make the decisions of public mental health workers absolutely immune from tort liability, no matter how contrary to accepted standards of the profession and no matter how unrelated to policy considerations. *See Nusbaum,* 422 N.W.2d at 719 (commenting on the role of legislative intent).

■ We conclude that the legislature did not intend to allow public mental health workers to disregard all standards of their profession in treating patients under the protection of a policy-based "discretionary act." Neither do we believe that the legislature intended to enable public mental health care workers to carry out "policies" that are directly contrary to accepted medical standards of practice and which may be wholly unrelated to effective government. We per-

ceive no sound policy consideration for holding public mental health care workers to a lower standard of care than their private counterparts, or no standard at all, once the decision to treat a patient has been made.

Furthermore, the county has failed to identify any of the policy concerns that would arguably bring this case within the discretionary function exception. As this court stated in *Diedrich*:

> We cannot agree with the trial court that *every* action taken in relation to a mentally ill patient involves the determination or effectuation of governmental policy.

*Diedrich*, 393 N.W.2d at 682 (emphasis added). Indeed, such a holding would run afoul of the Minnesota Supreme Court's warning that "almost *every* act involves some measure of discretion, and yet undoubtedly not *every* act of government is entitled to discretionary immunity." *Cairl*, 323 N.W.2d at 23 (emphasis added).

Even if we were to assume that the trial court was concerned with the state's "open-door" policy for mentally ill patients, we do not think that such a consideration is applicable to this case. This patient repeatedly presented himself to a mental health facility and even expressed his desire to be hospitalized. Closer monitoring or voluntary hospitalization in such a case would not appear to be contrary to the state's "open-door" policy.

## IV.

Finally, the county appears to have misconstrued the meaning of various Minnesota cases, interpreting them to provide a bright-line rule that discretionary immunity always applies to "release decisions." The cases cited, however, did not involve a medical decision by a professional psychiatrist to release a patient. *Engle*, for example, involved the decision of a Crisis Intervention Center social worker to allow a wife to drive her husband to a hospital after he had arrived at the Center experiencing drug-related paranoia. The court noted the following:

> [The social worker] believed an inpatient psychiatric evaluation was required and, because Engle agreed to hospitalization, Dickel made arrangements for Engle, as a Group Health subscriber, to enter Fairview–St. Mary's. Dickel testified that *Engle denied any suicidal or homicidal thoughts* and that he focused solely on the idea that others were out to kill him. Dickel did not believe there was justification for a 72 hour emergency hold to be placed on Engle since *he was not a serious threat to himself or others*.

*Engle*, 412 N.W.2d at 365–66 (emphasis added). The present case is different because the very reason Denais sought help from HCMHC was due to his suicidal thoughts. Furthermore, Denais was evaluated by a professional psychiatrist.

*Cairl* involved the decision to release a juvenile with a proclivity to start fires for a Christmas home visit as part of his overall treatment program and "in accordance with stated policy to provide treatment by the least restrictive alternative * * *." *Cairl*, 323 N.W.2d at 22. In this case, however, the voluntary hospitalization of an increasingly depressed individual manifesting suicidal ideation could no more be considered overly "restrictive" than a doctor's medical decision to operate on a person in need of surgery.

Finally, both parties cite *Johnson v. State*, 536 N.W.2d 328 (Minn.App.1995), a recent case decided by this court. In *Johnson*, this court held that the decision to allow a prisoner to provide his own transportation to a halfway house was protected by discretionary function immunity, but that failure to make sure that he arrived at the halfway house was not protected. *Id.* at 333–34. In that case, however, relying upon a statute, this court determined that "the decision whether to require escorts for released prisoners is a legislative decision that should not be second-guessed by the judiciary." *Id.* at 333. There is no similar statute indicating that the manner of treatment for a depressed patient always involves legislative considerations. To the contrary, this appears to be a decision best made by the attending psychiatrist on a case-by-case basis in accordance with the accepted standards of the profession.

We do find *Johnson* instructive, however, regarding the potential liability of the county for its "non-medical professional" employees. For example, the county has failed to estab-

lish immunity regarding the conduct of the social worker who had contact with Denais. We conclude that if, as in *Johnson*, the failure to make sure that a prisoner arrives at a halfway house is not protected by discretionary immunity, then the failure of a social worker to follow up on Denais's case after Denais missed his appointment may also be the type of decision that is not protected by discretionary immunity, particularly if such an omission was contrary to the county's policy. *See Olson*, 509 N.W.2d at 371 (implementation of social worker's case plan not protected by discretionary immunity). We do not, of course, express any opinion about whether the social worker's conduct constitutes negligence under the facts and circumstances of this case. We address only the issue of discretionary immunity.

We emphasize that this case does not address the issue of whether the decision of a public mental health facility to treat or not to treat an individual is immunized from tort liability. We merely hold that once the decision to treat has been made, the manner in which treatment is rendered is not absolutely immune from tort liability. We do note, however, that some forms of treatment, such as those involving substantial costs and very low rates of success, may be subject to important public policy considerations. In such cases, however, the county bears the burden of demonstrating that it is entitled to immunity due to such policy considerations. The county has made no such showing here, broadly arguing, instead, that it enjoys absolute immunity in rendering mental health services.

## DECISION

The trial court erred in dismissing the trustee's claims for failure to state a claim upon which relief can be granted. The trial court's decision is reversed and the case is remanded for proceedings in accordance with this opinion.

**Reversed and remanded.**