**Lori A. KOELLN, et al., Respondents,**

v.

**NEXUS RESIDENTIAL TREATMENT FACILITY, Appellant,**

**County of Ramsey, State of Minnesota, Respondents,**

**Michael A. Paulson, Defendant.**

**No. C7–92–1426.**

Court of Appeals of Minnesota.

Jan. 26, 1993.

Review Denied March 22, 1993.

Wayne A. Hergott, Peter A. Koller, Charles E. Jones, Moss & Barnett, Minneapolis, for respondents Lori A. Koelln, et al.

Anita J. Jehl, Joseph B. Marshall, Marshall and Associates, Circle Pines, for appellant Nexus Residential Treatment Facility.

Tom Foley, Ramsey County Atty., Lane Kirchner, C. David Dietz, Asst. County Attys., St. Paul, for respondent County of Ramsey.

Hubert H. Humphrey, III, Atty. Gen., James S. Alexander, Sp. Asst. Atty. Gen., St. Paul, for respondent State of Minnesota.

Considered and decided by FORSBERG, P.J., and NORTON and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.[*]

Respondents Lori Koelln and Mark Koelln filed an action in negligence against Nexus Residential Treatment Facility, Ramsey County, and the State of Minnesota for actions which they allege resulted in defendant Michael Paulson's sexual assault on Lori Koelln. The trial court granted the state's motion to dismiss and the county's motion for summary judgment based on immunity. It denied Nexus' motion for summary judgment based on immunity. Nexus appeals from the trial court denial of its motion for summary judgment. The Koellns filed a notice of review, challenging the trial court's order holding the county and the state immune from suit. We affirm.

## FACTS

In the early 1980's, Michael Paulson allegedly committed a number of sexual assaults. In 1983, he pleaded guilty to two counts of criminal sexual conduct in the first degree and one count of attempted criminal sexual conduct in the first degree. The trial court sentenced him to 124 months.

Paulson's scheduled release date was in April 1990. His Ramsey County parole officer tried unsuccessfully to find an appropriate placement for him. The Ramsey County Attorney's office petitioned to have Paulson committed as a psychopathic personality pursuant to Minn.Stat. § 526.09 (1990). Paulson admitted the petition and waived the hearing. The trial court entered findings of fact and conclusions of law adjudicating Paulson as a psychopathic personality, and it dually committed him to Alpha House, if it accepted him, and to the Minnesota Security Hospital. Alpha House

---

[*] Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

evaluated Paulson and concluded he was not an appropriate candidate. Consequently, Paulson remained at the security hospital.

Paulson waived a hearing on his indeterminate commitment as a psychopathic personality, and again admitted the petition. The court committed him as a psychopathic personality for an indeterminate period to Nexus, if it accepted him, and to the Minnesota Security Hospital.

Nexus accepted appellant, and he began his term of commitment there on October 11, 1990. On February 18, 1991, Paulson left Nexus without permission, but returned the same day after speaking with his parole officer. On February 19, 1991, the Nexus adult program director and the parole officer agreed it was best that Paulson remain at Nexus for treatment, rather than being returned to the security hospital. As required, the parole officer contacted a deputy director of the Minnesota Office of Adult Release, who orally approved the recommendation that Paulson remain at Nexus to complete sex offender treatment. Three days later, Paulson's Nexus case manager advised another case worker that Paulson had told group therapy members that during his absence he had looked for someone to rape, but had fled to his parents' home rather than carry out these thoughts. The case manager believed Paulson's admissions and return demonstrated growth.

On March 7, 1991, at Paulson's review hearing, the parole officer was first informed of Paulson's disclosure of his thoughts of raping a woman. The following day, he contacted law enforcement agencies to determine whether any sexual offenses had been reported during Paulson's absence, but none were reported.

On the morning of March 18, 1991, a Nexus employee telephoned the parole officer to inform him that Paulson had been absent without permission since 11:30 p.m. the prior day. The parole officer immediately contacted the deputy director and requested an arrest warrant. He also called Paulson's father and the Minneapolis and St. Paul Police Departments. It was later discovered that throughout the night and into the following morning, Paulson had walked approximately eight miles along the railroad tracks into Chaska, where he sexually assaulted Lori Koelln at her home. Paulson's mother called the parole officer later that day and told him that her son had raped a woman, and was turning himself in to the Duluth Police Department.

Lori Koelln and Mark Koelln brought an action against Michael Paulson alleging battery, false imprisonment, and negligent and intentional infliction of emotional distress. They also brought an action in negligence against Nexus, the county, and the state. The state moved to dismiss based upon immunity and the county moved for summary judgment based upon immunity. The trial court granted these motions and dismissed the state and county. Nexus moved for summary judgment based upon quasi-judicial immunity and discretionary immunity. The trial court denied its motion.

Nexus appeals from the trial court's denial of its motion for summary judgment. The Koellns filed a notice of review challenging the trial court's order finding the county and the state immune from suit. We affirm.

## ISSUES

I. Are the state and county entitled to discretionary immunity?

II. Is Nexus entitled to summary judgment based upon quasi-judicial immunity?

III. Is Nexus entitled to summary judgment based upon discretionary immunity?

## ANALYSIS

### I.

We will first consider the issues raised in the Koellns' notice of review, challenging the trial court's dismissal of the county and state from their action. If a claim is barred by immunity, the governmental entity is entitled to dismissal. *Diedrich v. State*, 393 N.W.2d 677, 680 (Minn.App.1986), *pet. for rev. denied* (Minn. Nov. 26, 1986). The state moved to

dismiss the case for "failure to state a claim upon which relief can be granted." Minn.R.Civ.P. 12.02. Because the court considered materials outside the pleadings, we consider the motion as one for summary judgment. *Id.* Ramsey County moved for summary judgment pursuant to Minn. R.Civ.P. 56.02. The trial court granted both motions, and dismissed the state and county.

■■■ Summary judgment is proper where there are no genuine issues of material fact, and either party is entitled to judgment as a matter of law. Minn. R.Civ.P. 56.03; *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The moving party has the burden of proof, and inferences must be resolved against that party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). On review, this court must view the evidence in the light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

The state is generally liable for its tortious acts:

> The state will pay compensation for * * * personal injury * * * caused by an act or omission of an employee of the state while acting within the scope of office or employment * * * under circumstances where the state, if a private person, would be liable to the claimant.

Minn.Stat. § 3.736, subd. 1 (1990). Discretionary immunity constitutes an exception to the general liability provisions:

> Without intent to preclude the courts from finding additional cases where the state and its employees should not, in equity and good conscience, pay compensation for personal injuries or property losses, the legislature declares that the state and its employees are not liable for the following losses: * * * a loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused.

Minn.Stat. § 3.736, subd. 3(b) (Supp.1991).

Likewise, a municipality is generally "subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." Minn.Stat. § 466.02 (1990). One exception is:

> Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

Minn.Stat. § 466.03, subd. 6 (1990). Further, the municipality is immune from any claim which would be excluded if brought against the state under Minn.Stat. § 3.736. Minn.Stat. § 466.03, subd. 15 (1990).

■■ The Koellns argue the state and county are not entitled to summary judgment on discretionary immunity grounds. Instead, they contend there is at least a question of material fact as to whether the state and county failed to perform a ministerial duty, which would subject them to liability. The Koellns assert the state and county had the duty to return Paulson to the security hospital after he violated one of the Nexus program conditions by leaving the facility without permission the first time. They put forth two different theories in support of their argument.

First, the Koellns argue that the failure of the state and county to comply with conditions referenced and incorporated in the court's commitment order subjects them to liability. *See McCorkell v. City of Northfield,* 266 Minn. 267, 271, 123 N.W.2d 367, 370–71 (1963); *see also Semler v. Psychiatric Inst. of Wash., D.C.,* 538 F.2d 121 (4th Cir.), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976). The trial court here found no such agreement was incorporated into the commitment order, and that therefore there were no violations of the order. *Cf. Semler,* 538 F.2d at 124.

The Koellns cite two items in support of their argument. First, they refer to an assistant Ramsey County attorney's September 19, 1990 letter to the trial court requesting Paulson's case be placed on the calendar, in which she stated:

> It is my understanding Mr. Paulson will admit the psychopathic personality petition for a final commitment to the NEXUS program and St. Peter Regional Treatment Center. * * * If there would be any violations of the treatment pro-

gram, recommendations of the case manager or probation officer, then Mr. Paulson would be transferred to the security hospital.

Second, they cite a document signed by Paulson and his attorney entitled "Waiver of Hearing on Petition for Commitment," dated September 21, 1990, in which Paulson waived his right to a hearing on the indeterminate commitment. At the bottom of this document is a handwritten statement stating in relevant part:

> Stipulated that if Mr. Paulson is accepted to Nexus program, if he violates any conditions of the Nexus program or conditions they require he would be immediately transferred to St. Peter Security Hospital.

The trial court in its commitment order referred to the fact that Paulson signed the waiver of hearing. The court did not include any explicit conditions for appellant's stay at Nexus, or any consequences for violating the conditions.

There are no facts showing that the state was a party to the stipulation or hearing, or was aware of any alleged conditions. It therefore cannot be bound by it. *See In re Bowers*, 456 N.W.2d 734, 737 (Minn.App. 1990). The order on its face does not refer to any conditions for Paulson's stay at Nexus and we will not read into the order that which is not there. Thus, the county also cannot be held liable for violation of the alleged condition based upon the terms of the order.

■ In their second theory in support of the argument that the court improperly granted summary judgment, the Koellns contend that there is at least a fact question as to whether the failure of the county and state to return Paulson to the security hospital after he left Nexus without permission the first time violated the policy the state and county developed to deal with Paulson, rendering them liable. We will first address whether this constituted a ministerial duty or a discretionary decision. The test to determine the difference between these two is not precise. *See Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992).

■ "A discretionary act is one which requires a balancing of complex and competing factors at the planning, rather than the operational, stage of development." *Ostendorf v. Kenyon*, 347 N.W.2d 834, 837 (Minn.App.1984). The basis for the discretionary function exception is that "the judicial branch of government should not, through the medium of tort actions, second-guess certain policy-making activities that are legislative or executive in nature." *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 718 (Minn.1988). The focus must be on "whether the legislature intended to immunize the particular government activity that is the subject of the tort action." *Id.* at 719. A significant consideration is whether the threat of liability would impair effective performance of the governmental act complained of. *Cairl v. State*, 323 N.W.2d 20, 23 n. 3 (Minn.1982). Discretionary immunity is an exception to the general rule of governmental liability and must therefore be narrowly construed. *Id.* at 23.

■ In contrast, a ministerial act is defined as "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937), *quoted in Ostendorf*, 347 N.W.2d at 837. A ministerial act involves an operational level of conduct, rather than a policymaking or planning level. *See Larson v. Independent Sch. Dist. No. 314*, 289 N.W.2d 112, 120 (Minn.1979).

The Koellns argue it is established in other jurisdictions that a governmental entity can assume a duty with respect to confinement and release of a mental patient, and be liable for failure to perform its assumed duty. *See Williams v. United States*, 450 F.Supp. 1040 (D.S.D.1978) (hospital agreed to notify sheriff of release of dangerous mental patient but failed to do so and was liable in negligence).

Appellate courts have held decisions regarding the placement of inmates and patients, and decisions regarding how much liberty to afford them, are protected policy decisions immune from suit under the doc-

trine of discretionary immunity. In *Papenhausen v. Schoen*, 268 N.W.2d 565, 567 (Minn.1978), the state was held immune from suit for a decision to grant a "medical parole" of a mentally ill rapist from a prison to an open state hospital, where he escaped and raped a woman. The court noted that the selection and monitoring of treatment programs, based upon the examination of patients and their files, is "an indisputably discretionary activity, involving as it does the application of skilled judgment to a wide variety of human conditions." *Id.* at 572; *see also Cairl*, 323 N.W.2d at 22 (immunity for decision to release dangerous youth from state institution into community on holiday leave, where youth set fire causing injuries). The supreme court emphasized in *Cairl* that a significant consideration was the extent to which the threat of liability would impair the performance of the governmental action. *Id.* at 23 n. 3. Without immunity, release decisions would become unduly responsive to liability, and the statewide policy favoring open door treatment rather than custodial detention of the state's mentally ill would be undermined. *Id.*

We agree that the decision to allow Paulson to remain at Nexus was a complex discretionary decision that weighed protected policy considerations. Many factors were considered, including Paulson's progress, his treatment, and the recommendations of Nexus and Ramsey County that Paulson should be allowed to continue in treatment, rather than being returned to the security hospital. The trial court properly dismissed the claims against the state and county based on discretionary immunity.

## II.

We will next consider Nexus' appeal. Nexus moved the trial court for summary judgment, contending that it was entitled to quasi-judicial immunity from the Koellns' claims. The trial court denied its motion, and Nexus appealed the decision to this court. This court denied the Koellns' motion to dismiss Nexus' appeal, because an order rejecting a motion for summary judgment based on a claim of immunity from suit is immediately appealable. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986).

The purpose of judicial immunity is to protect an officer or judge from liability for acts performed in the exercise of judicial authority. *Linder v. Foster*, 209 Minn. 43, 45, 295 N.W. 299, 300 (1940). "Because judicial immunity is intended to protect the judicial process, it also extends to persons who are integral parts of that process, including prosecutors, counsel, and witnesses." *Sloper v. Dodge*, 426 N.W.2d 478, 479 (Minn.App.1988) (citing *Briscoe v. LaHue*, 460 U.S. 325, 334–35, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983)). For example, court-appointed physicians who prepare and submit medical evaluations relating to judicial proceedings are also entitled to quasi-judicial immunity. *Linder*, 209 Minn. at 48, 295 N.W. at 301 (commitment proceeding); *see also Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn.1988) (guardian ad litem); *Myers v. Price*, 463 N.W.2d 773, 776 (Minn.App.1990) (court-appointed therapist), *pet. for rev. denied* (Minn. Feb. 4, 1991). The reason for the rule is to encourage full disclosure in court proceedings so the truth may be determined. *Briscoe*, 460 U.S. at 335, 103 S.Ct. at 1115.

Paulson's placement at Nexus was conditioned on Nexus' acceptance of him into its program. The trial court rejected Nexus' summary judgment motion on the grounds that there was a factual issue as to whether Nexus, a private entity, was in fact "appointed" by the court. In *Sloper*, 426 N.W.2d at 479, this court held there was a fact question as to whether a therapist was court-appointed so that he would be entitled to discretionary immunity as a quasi-judicial officer. We agree with the trial court that the same fact question is raised here, making the issue inappropriate for summary judgment. However, we will nevertheless address the merits.

Nexus argues that it is entitled to quasi-judicial immunity. It notes the purpose of commitment is treatment, not punishment. *In re Martenies*, 350 N.W.2d 470, 473

(Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). Nexus contends that the treatment facilities to which the individuals are committed must be free of harassment and after-the-fact civil suits to enable vigorous efforts at treatment. Therefore, it contends decisions regarding treatment and supervision are within judicially delegated responsibilities and continue to be an integral part of the judicial process.

The reason for the rule, to encourage full disclosure of facts in a judicial setting, would not be met by giving immunity to the private residential treatment center. *See Briscoe,* 460 U.S. at 335, 103 S.Ct. at 1115. Further, the actions of the treatment center which are in dispute here arose after the commitment process was completed, and are not an integral part of the judicial process. We agree with the trial court that Nexus is not entitled to quasi-judicial immunity for these actions.

### III.

■ The final issue is whether Nexus is entitled to discretionary immunity. The trial court ruled that Nexus, which is a private entity, does not appear to be included in the governmental discretionary immunity provisions as set forth in Minn.Stat. § 3.736, subd. 3(b) (state) and Minn.Stat. § 466.03, subds. 6, 15 (municipality).

Nexus claims that it falls within the immunity provisions because it was acting on behalf of the state and municipality in an official capacity. *See* Minn.Stat. §§ 3.732, subd. 1(2), 466.01, subd. 6 (1990). It argues it was acting on behalf of governmental bodies because Paulson was under a civil commitment order to Nexus while continuing under the custody and control of the Department of Corrections by virtue of a supervised release order which mandated sex offender treatment. It asserts Nexus was chosen because of its licensing as a treatment facility, and that it did not have authority to restrict or transfer Paulson. Nexus also contends that finding liability would result in restricting government decisions as to placement.

The state tort claims act and its exceptions apply in relevant part to an act or omission "of an employee of the state while acting within the scope of office or employment." Minn.Stat. § 3.736, subd. 1. "State" is defined as including departments, boards, agencies, commissions, courts, and officers in the executive, legislative, and judicial branches of the state. Minn.Stat. § 3.732, subd. 1(1) (1990). Among the specific entities included are state hospitals and state penal institutions. *Id.* "Employee of the state" is defined as including all present or former officers, members, directors, or employees of the state, or persons acting on behalf of the state in an official capacity, temporary or permanent, with or without compensation. Minn.Stat. § 3.732, subd. 1(2). It does not include an independent contractor. *Id.* "Scope of office or employment" means the employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned by competent authority. Minn.Stat. § 3.732, subd. 1(3).

■ Likewise, the tort liability act for municipalities provides that, subject to exceptions, every municipality is liable for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties. Minn.Stat. § 466.02. Municipality includes any city, county, town, public authority, public corporation, special district, school district, library, or other political subdivision. Minn.Stat. § 466.01, subd. 1 (1990). Employee, officer, or agent means a present or former employee, officer, or agent of a municipality or other person acting on behalf of the municipality in an official capacity, temporary or permanent, with or without compensation. Minn.Stat. § 466.01, subd. 6. It does not include an independent contractor. *Id.* The burden is on the unit attempting to prove it is immune under the discretionary function exception. *See Nusbaum,* 422 N.W.2d at 722 n. 6.

Limited immunity for governmental entities and officials from tort liability arising out of acts or omissions which involve the exercise of discretion is premised on the belief that the judicial branch of the gov-

ernment should not, through tort actions, second-guess certain policymaking activities that are legislative or executive in nature. *Nusbaum*, 422 N.W.2d at 718. However, Nexus' claim is not based on the conduct of a branch of government, and separation of powers concerns do not arise.

Discretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of liability. *Larson*, 289 N.W.2d at 121. If the legislature wishes to provide discretionary immunity to a particular nongovernmental entity, it may do so. *Cf.* Minn.Stat. § 246A.18 (1990) (hospital subsidy corporation is "municipality" for purposes of tort liability pursuant to Minn.Stat. ch. 466). The legislature has passed laws relating specifically to the liability of such facilities, and has adopted a negligence standard without reference to discretionary liability. *See* Minn. Stat. § 253B.093, subd. 6 (1990) (community-based facilities provided with immunity from liability for actions of a patient if the facility follows "accepted community standards of professional practice in the management, supervision and treatment of the patient").

There are no facts showing Nexus is an employee of the state or county within the meaning of the discretionary immunity statutes. *See Ossenfort v. Associated Milk Prods., Inc.*, 254 N.W.2d 672, 676 (Minn.1977) (factors in distinguishing employee from independent contractor). Nor is there a showing that Nexus was acting on behalf of the state or county in an official capacity. The trial court properly ruled that Minn.Stat. § 3.736, subd. 3(b) and Minn.Stat. § 466.03, subds. 6, 15 do not apply to Nexus.

DECISION

The orders of the trial court are affirmed.

Affirmed.

