**Catherine F. PETERKA, Respondent,**

v.

**Stephen G. DENNIS, Certified Public Accountant, et al., Appellants,**

**Todd R. Haugan, Attorney at Law, Defendant.**

**No. A07–165.**

Supreme Court of Minnesota.

May 7, 2009.

**830**

John M. Degnan, Diane B. Bratvold, Jonathan P. Schmidt, Briggs & Morgan, P.A., Minneapolis, Minnesota, for appellants.

Richard E. Bosse, Law Offices of Richard E. Bosse, Chtd., Henning, Minnesota, for respondent.

Thomas J. Shroyer, Peter A. Koller, Moss & Barnett, P.A., Minneapolis, Minne-

sota, for amicus curiae Minnesota Society of Certified Public Accountants.

Mary Catherine Lauhead, Law Offices of Mary Catherine Lauhead, St. Paul, Minnesota; Michael D. Dittberner, Clugg, Linder, Dittberner & Bryant, Ltd., Edina, Minnesota; Cheryl M. Prince, Hanft Fride, P.A., Duluth, Minnesota; and Joan H. Lucas, Lucas Family Law, LLC, St. Paul, Minnesota, for amici curiae Family Law Section of the Minnesota State Bar Association and American Academy of Matrimonial Lawyers, Minnesota Chapter.

## OPINION

PAGE, Justice.

Respondent Catherine F. Peterka sued appellant, Stephen G. Dennis, CPA, alleging breach of contract and that Dennis committed professional malpractice by applying an incorrect method to value marital property in the form of business assets during Catherine Peterka's divorce from her former husband. Catherine Peterka also named Dennis's employer, appellant Baune, Dosen & Co. (Baune Dosen), as a defendant in the suit. The district court granted Dennis and Baune Dosen summary judgment, holding that Dennis was protected by quasi-judicial immunity and that, absent liability on Dennis's part, Baune Dosen was also immune. The court of appeals reversed. Based on our conclusion that Dennis is immune from civil suit as a Rule 706 expert, we reverse the court of appeals and reinstate the district court's order for summary judgment.

The divorce proceedings giving rise to these claims commenced in April 1996, with dissolution of the marriage occurring in March 1998. As part of the proceedings, Catherine Peterka, her spouse, and their respective counsel agreed to have the couple's business assets, including interests in two home-building companies, valued by a neutral evaluator. *See* Minn. Stat. § 518.58, subd. 1 (2008) (requiring the district court in a marriage dissolution proceeding to "value marital assets for purposes of division between the parties").

On March 17, 1997, the district court issued an Order for Temporary Relief, stating, "[t]he parties' business will be valued by an independent evaluator from Judge Davidson's list of neutrals. Each party shall advance one-half of the retainer with final responsibility for the [entire] fee reserved."

The neutral evaluator initially selected by the Peterkas withdrew. When asked, Dennis agreed to serve as the neutral evaluator on the condition that he be court appointed. Acting on Dennis's request for court appointment, Mr. Peterka's counsel drafted an Order and Stipulation for Order appointing Dennis as an independent neutral. Both Peterkas stipulated to Dennis's appointment and the district court signed the Order and Stipulation for Order on September 30, 1997.

In an affidavit in this litigation, Dennis indicated that, to insure his immunity from malpractice suits, he typically requires court appointment before performing valuations in divorce proceedings and that he would not have evaluated the Peterka business entities if he had not been court appointed. Another affidavit indicates that Dennis believed that he was appointed under Minnesota Rules of Evidence 706 and was immune from suit. In her affidavit, Roselyn Nordaune, divorce counsel for Catherine Peterka, stated her understanding that because Dennis was appointed "to act as an independent, neutral evaluator in the valuation of the Peterka business entities, the valuation conducted by Mr. Dennis was performed on behalf of the Court as agreed to by the parties." In his affidavit, Douglas Nill, divorce counsel for Mr. Peterka, indicates that "the valuation conducted by Mr. Dennis was performed on behalf of the Court as agreed to by the

parties." Finally, Todd Haugan, who succeeded Nordaune as counsel for Catherine Peterka sometime before the court issued its September 30, 1997, order appointing Dennis, testified in his deposition that, although the court's order appointing Dennis did not specifically reference Evidence Rule 706, it was his understanding that Dennis was authorized to do the valuation as a Rule 706 expert.

In the divorce proceeding, Dennis provided his analysis and valuation opinion of the Peterka business entities to the court and to each of the Peterkas. After receiving Dennis's report, Catherine Peterka's counsel had the report reviewed by another CPA. After reviewing the report, that CPA was of the opinion that Dennis had used the proper methodology in his valuation. That CPA was not called to testify about Dennis's report in the divorce proceeding. The record indicates that Dennis testified about his valuation of the Peterka business entities and was subject to cross-examination at a hearing during the divorce proceedings. The district court ultimately awarded Catherine Peterka 50% of the businesses' value, as determined by Dennis's valuation. During the divorce proceedings, Catherine Peterka did not dispute the valuation of the businesses. Nor did she seek review of the district court's March 20, 1998, Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree that dissolved the Peterkas' marriage and allocated the Peterkas' marital assets based in part on Dennis's valuation of the two businesses.

On May 10, 2004, Catherine Peterka filed suit against Dennis [1] in district court alleging that (1) Dennis breached his contract with her by failing to provide accurate accounting and appraisal services, and (2) that Dennis committed professional malpractice in his valuation. The complaint makes these same allegations against Baune Dosen. According to Catherine Peterka, Dennis should have valued the businesses using the fair market value of the businesses' inventory rather than the inventory's book value. She claims that, as a result, her share of the value of the two businesses was undervalued by $746,672. The district court dismissed the claims on summary judgment, finding that Dennis was entitled to quasi-judicial immunity and that, as a result, Baune Dosen was also immune. As noted, the court of appeals reversed.

## I.

On appeal from summary judgment, we review de novo whether "a genuine issue of material fact exists, and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). We view the evidence in the light most favorable to the one against whom summary judgment was granted. *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). "[I]mmunity is a question of law," which we review de novo. *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn.2004).

Dennis's claim to immunity from Catherine Peterka's lawsuit is based on two independent but somewhat related grounds. Dennis argues that he is entitled to immunity under Rule 706 of the Minnesota Rules of Evidence because, at the time he valued the Peterka business entities, he was acting as a court-appointed neutral evaluator pursuant to that rule. Alternatively, Dennis argues that he is entitled to quasi-judicial immunity under

---

1. Catherine Peterka also named her divorce attorney in the complaint. Her claims against her attorney have been settled by way of a *Pierringer* agreement and are not before us in this proceeding. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

our case law. For the reasons discussed below, we conclude that Dennis is entitled to immunity under Rule 706 and therefore reverse the decision of the court of appeals and reinstate the district court's order for summary judgment.[2]

Rule 706(a) provides:

The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

Catherine Peterka argues that Dennis was not appointed under Rule 706 because the court's order appointing Dennis makes no mention of "appointment" or "Rule 706."[3] She further argues that language from the judgment and decree confirms that Dennis was jointly retained by the parties and, therefore, was not appointed under the Rule.

We conclude, on the record presented, that, although the district court did not specifically indicate that it was appointing Dennis under Rule 706, the practical effect of the court's order, as well as the conduct of the parties and Dennis, was such an appointment. First, Rule 706 provides that "[t]he court may appoint any expert witnesses agreed upon by the parties." Here, the Peterkas mutually agreed on Dennis's appointment and the court appointed him. Second, Rule 706 requires the expert to consent to his or her appointment. Here, Dennis consented to the appointment and would not have consented to evaluating the Peterka business entities absent appointment by the court. Third, Rule 706 requires that the expert be informed of his or her duties in writing by the court. Here, the court's written order instructed Dennis to conduct a neutral evaluation of the Peterka business entities. Fourth, Rule 706 requires a copy of the written instructions to be filed with the clerk. Here, the court's order was filed with the Hennepin County District Court. Fifth, Rule 706 requires the expert to advise the parties of the expert's findings. Here, the record indicates that Dennis provided written reports to the Peterkas and to the court. Sixth, Rule 706 provides that the expert may be called to testify by the court or any party. Here, the record indicates that Dennis was called to testify during the divorce proceedings. Finally,

2. Because we conclude that Dennis is entitled to immunity under Rule 706, we do not reach the question of whether he is entitled to quasi-judicial immunity.

3. The court's order reads, in part, as follows: The purpose of this Order and Stipulation for Order is to direct that the parties shall cooperate with an independent neutral evaluation of the value of the parties' business assets by Steve Dennis, CPA, JD; that each party shall within three days of entry of this Order advance one-half of the retainer requested by Mr. Dennis; that each party shall be responsible for one-half of Mr. Dennis'[s] total evaluation fee and costs; and that if a party fails to cooperate and promptly sign and provide all documents as requested by Mr. Dennis, that party shall be responsible for attorney fees incurred in seeking court enforcement of this Order and Stipulation for Order or sanctions. The court's subsequent judgment and decree of dissolution states that "[t]he parties retained Steve Dennis, CPA, JD, as an independent neutral to conduct an evaluation of the parties' businesses."

Rule 706 requires that an expert called to testify must be subject to cross-examination by the parties. Here, the record indicates that Dennis was, in fact, cross-examined.

Although it would have been better practice for the district court to have indicated in the order that Dennis's appointment was being made under Rule 706, the rule itself does not specifically require such a reference. Based on the fact that Dennis's appointment met each of the requirements for appointment under Rule 706, and on the actions and understanding of counsel for each of the Peterkas with respect to Dennis's appointment, we conclude that the district court's order amounted to the appointment of Dennis as a Rule 706 expert witness.

Catherine Peterka also argues that Dennis was not appointed by the court because he was selected by the parties, but she provides no authority for her claim. Her argument does not alter our conclusion. In *Doe v. Hennepin County*, the District Court of Minnesota extended immunity to a psychologist whom the plaintiffs had selected from a court-approved list and who was then appointed by a court order. 623 F.Supp. 982, 986–87 (D.Minn.1985). The plaintiffs argued that, because of their stipulation, the psychologist was not appointed. *Id.* at 986. In concluding otherwise, the federal court noted that the psychologist did not meet with the plaintiffs until after she was court appointed. *Id.* n. 3. In this case, the Peterkas stipulated to Dennis's appointment pursuant to a court order that required the business assets to be valued by an independent neutral. As a condition to valuing the business assets, Dennis asked to be court appointed and did not begin valuing the businesses until the district court signed the order. On that basis, following the reasoning of *Doe*, we conclude that the Peterkas' stipulation does not negate the district court's order appointing Dennis.

## II.

■ We have not previously considered whether experts appointed under Rule 706 are protected by immunity.[4] A review of the reasoning from previous cases in which we have found entitlement to immunity suggests that extending immunity to Rule 706 experts is appropriate because public policy supports protecting such experts from harassing litigation and because such experts exercise discretionary judgment and provide assistance to the court.

*Public policy:* The integrity and independence of the judiciary depends on the ability of court-appointed experts to make decisions "uninfluenced by any fear or apprehension of [personal] consequences." *Stewart v. Case*, 53 Minn. 62, 67, 54 N.W. 938, 938 (1893) (extending immunity to assessors). Extending immunity also ensures that qualified experts will continue to serve the court, as otherwise "[n]o [person] would willingly serve ... or feel free to render an unpopular verdict." *Melady v. South St. Paul Live Stock Exch.*, 142 Minn. 194, 197, 171 N.W. 806, 807 (1919); *see also L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 377 (Minn.1989)

4. Catherine Peterka argues that the court cannot extend immunity absent statutory authorization to do so. We disagree. Courts have discretion to extend immunity. The United States Supreme Court has recognized that immunity has its basis in the common law and has extended immunity to prosecutors upon finding "the same considerations that underlie the common-law immunities of judges and grand jurors," namely, "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 422–23, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

(denying immunity to arbitrator would "chill the willingness of arbitrators to serve"); *Stewart*, 53 Minn. at 67, 54 N.W. at 938–39 (without immunity, it is doubtful that fit assessors would be induced to hold the office).

Citing these public policy concerns, we have extended immunity to public defenders, arbitrators, and guardian ad litems. *See Dziubak v. Mott*, 503 N.W.2d 771, 775 (Minn.1993) (public defenders "must be free to exercise independent, discretionary judgment ... without weighing every decision in terms of potential civil liability"); *Airco*, 446 N.W.2d at 376 (immunity of arbitrators rests on considerations of public policy); *Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn.1988) (guardian ad litems must be free to represent a child without "harassment from disgruntled parents who may take issue with any or all of the guardian's actions").

The public policy concerns identified above support extending immunity to Rule 706 experts whose participation must not be chilled and who must be free to render independent and unbiased advice to the court without fear of harassing litigation by dissatisfied parties. Such experts provide an important service to the court and extending immunity to them will encourage their continued participation.

Safeguards built into the judicial process further support extending immunity because they reduce the need to recover private damages from quasi-judicial officers. *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The trial process still remains adversarial and witnesses, such as testifying experts, are subject to cross-examination. *Id.; see also* Minn. R. Evid. 706(a) (providing that experts appointed under the Rule are subject to cross-examination). Parties can present their own expert testimony to refute the court-appointed expert. *See* Minn. R. Evid. 706(d). The trial judge has

remedial powers and is not bound by the appointed expert's recommendations. *See Imbler*, 424 U.S. at 427, 96 S.Ct. 984. Trial errors can be corrected on appeal. *Butz*, 438 U.S. at 512, 98 S.Ct. 2894. And, finally, experts appointed pursuant to Rule 706 may be subject to professional disciplinary proceedings for any misconduct.

■ *Discretionary judgment:* "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (quoting *Imbler*, 424 U.S. at 423 n. 20, 96 S.Ct. 984). Discretionary judgment is not limited to the exercise of final adjudicatory decision-making; rather, we have extended quasi-judicial immunity to those who exercise discretionary judgment within government or legal proceedings. *See, e.g., Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 213 (Minn.1981) (prosecutors referred to as " 'quasi-judicial' officials" because they "exercise a discretionary judgment"); *Hoppe v. Klapperich*, 224 Minn. 224, 240–41, 28 N.W.2d 780, 791 (1947) (in performing duties to a client, attorney is immune from suits by third parties so long as he acts as a quasi-judicial officer, determining his obligations to the public and to his client); *Robinette v. Price*, 214 Minn. 521, 533, 8 N.W.2d 800, 807 (1943) (duties of county welfare board involved "inquiry of fact and the exercise of judgment based on such inquiry" and were therefore "not ministerial, but *quasi judicial* in nature"); *Linder v. Foster*, 209 Minn. 43, 48, 295 N.W. 299, 301 (1940) (surgeons and physicians examined a plaintiff, made findings, and issued a report); *Stewart*, 53 Minn. at 66, 54 N.W. at 938 (tax assessor "must

determine [the value of property] upon his judgment").

In *Imbler*, the United States Supreme Court explained the importance of extending immunity to prosecutors, as they must be free to make discretionary decisions about what suits to bring and how to bring them without fear of potential suits brought by disgruntled parties. 424 U.S. at 424–25, 96 S.Ct. 984. In contrast, the Supreme Court has not extended immunity to court reporters, as their job is to accurately record what transpires in court and does not require any discretionary decision-making. *Antoine*, 508 U.S. at 436–37, 113 S.Ct. 2167. As in *Imbler*, experts appointed under Rule 706 are appointed by the court to exercise discretionary judgment in advising the court.

*Assistance to the court:* The Third Circuit has articulately distinguished court-appointed neutral experts from privately retained experts, explaining that privately retained experts contract with a party, are paid by that party, and are expected "to some extent . . . to provide a recommendation that favors their client." *Hughes v. Long*, 242 F.3d 121, 130 (3rd Cir.2001). In contrast, a court-appointed neutral evaluator is appointed to assist the court in performing its neutral judicial function, and they are "accountable to the court alone for the performance of [their] duties." *See Peterson v. Darelius*, 168 Minn. 365, 368, 210 N.W. 38, 39 (1926) (extending immunity to receivers).[5] Like the receiver in *Peterson*, Rule 706 experts are appointed to aid the court in the performance of the court's neutral judicial function.

For the reasons discussed above, we conclude that experts appointed under Rule 706 are entitled to immunity for duties performed pursuant to their appointment. Because we conclude that Rule 706 experts are protected by immunity, we also conclude that Dennis is entitled to immunity in this case for both the content of his report as well as his testimony.

### III.

Catherine Peterka also seeks to recover from Dennis's employer, Baune Dosen. In *Melady*, we found it "difficult to perceive any theory upon which liability on the part of defendant may be attributed to [the corporation] because of the acts of its directors, if such acts did not make them liable individually." 142 Minn. at 198, 171 N.W. at 807. Similarly, we conclude that because Dennis is entitled to immunity, Baune Dosen is also entitled to immunity.

### IV.

Catherine Peterka also argues that we should review the valuation method that Dennis applied. Immunity extends to acts or determinations that are erroneous so long as the acts or determinations fall within the scope of the judicial function. *Linder*, 209 Minn. at 45–46, 48, 295 N.W. at 300. Because Dennis is immune from suit and the contested valuation falls with-

---

**5.** Courts from other jurisdictions have concluded that court-appointed expert witnesses are accountable to the court and are not subject to suit by parties in the litigation. *See, e.g., Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir.1987) (court-appointed psychiatrist who was to examine plaintiff and report findings to the court functioned like a witness and was protected by absolute immunity); *Hughes*, 242 F.3d at 131 (court-appointed expert witnesses were immune from breach-of-contract claim); *Provencher v. Buzzell–Plourde Assocs.*, 142 N.H. 848, 711 A.2d 251, 256 (1998) (state-appointed appraiser immune from breach-of-contract claim); *Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994) (court dismissed father's negligence claim against court-appointed psychologist who misdiagnosed child as being abused, concluding that the psychologist owed no duty of care to the father).

in the scope of his immunity, we do not consider whether Dennis's valuation method was in error.

Reversed.

MAGNUSON, C.J., took no part in the consideration or decision of this case.