Mark A. VANGELDER, Appellant,

v.

June M. JOHNSON, Respondent.

No. A–12–0216.

Court of Appeals of Minnesota.

Oct. 22, 2012.

Review Denied Jan. 15, 2013.

Malcolm P. Terry, Kristy A. Saum, Benjamin J. Court, Messerli & Kramer, P.A., Minneapolis, MN, for appellant.

Michael J. Ford, Sarah R. Jewell, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; ROSS, Judge; and CONNOLLY, Judge.

## OPINION

ROSS, Judge.

Divorcing parents were required by a dissolution decree to engage a parenting consultant to resolve parenting disputes. The father sued the parenting consultant for negligence and breach of contract for her parenting-consultant decisions. The district court entered summary judgment dismissing the suit, holding that the consultant was entitled to quasi-judicial immunity. We hold that the district court correctly determined that the parenting consultant is entitled to quasi-judicial immunity for her parenting-consultant decisions, and we affirm.

## FACTS

Mark VanGelder and Mary Clifford divorced in May 2005. They have one daughter, A.V., born in October 1997. Their dissolution decree directed them to engage a parenting consultant to resolve any parenting disputes. It provided that the parenting consultant would

[r]esolve parenting and access time disputes by enforcing, interpreting, clarifying and addressing circumstances not specifically addressed by the parenting time provisions of [the dissolution decree] including the following issues: the time and location for the access exchange, any other parenting time decisions the parties cannot reach agree-

ment on, and parenting issues which arise and impact the minor child. The parenting consultant shall also have the authority to make changes in the access schedule as the minor child grows older.

The decree directed the parenting consultant first to mediate, and if that effort was not successful, to arbitrate the dispute and issue a decision. The parenting consultant's decision would be presumptively binding but subject to review in the district court. The dissolution decree expressly gave the parenting consultant "broader powers than [those] set forth in Minn. Stat. § 518.1751," the statute that defines the duties and powers of a parenting-time expeditor. *See* Minn. Stat. § 518.1751 (2010).

After an impasse in May 2010, VanGelder and Clifford entered into a private parenting-consultant agreement with June Johnson, owner of Tri–County Custody Services. In it, Johnson agreed to offer "impressions, opinions and recommendations" to address issues involving A.V. The agreement mirrored language of the dissolution decree without specifically mentioning it. Specifically, it provided that Johnson's decisions would be binding on VanGelder and Clifford and recognized VanGelder's and Clifford's right to appeal any decision to the district court.

Johnson testified that the practice of the Seventh Judicial District, where she usually provided her parenting-consultant services, was for the court to make parenting-consultant appointments. But in this circumstance, VanGelder's attorney told her that there was already a "complete appointment" under the dissolution decree and that VanGelder and Clifford had approved and signed the agreement so that there was no need for court appointment. Neither the parents nor Johnson sought a more explicit court appointment.

After entering the consultant agreement with the parents, Johnson met with them separately about their differences. They each then completed a parenting-information document for Johnson. Johnson then met with A.V., interviewed A.V.'s therapist, and viewed A.V.'s school records. Johnson then issued three written decisions.

Johnson issued her first decision in May 2010. It established a new parenting-time schedule and contained six requirements: (1) both parents must attend A.V.'s therapy sessions; (2) each parent must encourage A.V. to have a healthy relationship with the other parent and must refrain from disparaging or demeaning remarks; (3) neither parent may smoke or allow anyone else to smoke near A.V.; (4) each parent must monitor and ensure that A.V. is allowed only age-appropriate computer, music, video, and television access; (5) both parents must ensure that A.V. is not associated with or on the premises of VanGelder's pornographic bookstore; (6) VanGelder must provide documentation of his completing court-mandated co-parenting coursework.

Johnson issued a second decision in September 2010. In it, she noted that three of her May requirements had not been met: VanGelder and Clifford had continued their "acrimonious parenting relationship"; VanGelder had continued to take A.V. to his pornographic bookstore; and VanGelder had not completed the court-mandated co-parenting coursework and expressed that he had "no intentions" to do so. Johnson's September decision ordered both VanGelder and Clifford to obtain individual therapists to help them establish an amicable co-parenting relationship and required VanGelder to be responsible for all parenting-time transportation of A.V. until he could verify that he had successfully completed a co-parenting program. It

also threatened that if VanGelder continued to take A.V. to his bookstore, his parenting time "may be adversely affected."

Johnson issued her third decision in November 2010. She found that VanGelder and Clifford had failed to "regain the trusting parenting relationship they previously shared with one another" and that the parties had "been unsuccessful in moving forward" with their co-parenting relationship. The decision opined that the "most concerning" issues were VanGelder's "resistance to incorporate respectful communication and his extreme animosity" toward Clifford. The decision also observed that VanGelder still had not attended the mandated co-parenting class and ignored or opposed Johnson's two previous decisions. Johnson ordered Clifford and VanGelder to complete psychological evaluations within thirty days and to follow all therapeutic recommendations. She again directed VanGelder to verify completing the co-parenting program and to keep A.V. from his bookstore.

VanGelder challenged the parenting consultant's decisions in the district court in November 2010. He moved to restore his parenting time to 50%, to remove Johnson as the parenting consultant, and to be awarded attorney fees. He later moved that Johnson's November 22 decision be vacated. Clifford opposed VanGelder's motion and moved the court to enforce Johnson's decisions, to reduce VanGelder's parenting time until he complied with the decisions, and to order VanGelder to refrain from discussing the disputes with A.V. and to comply with the parenting schedule ordered by Johnson. In the alternative, she moved the court to reinstitute the parenting-time schedule established in the dissolution decree and to appoint a new parenting consultant if it removed Johnson.

The district court found that Johnson's May 31 decision was within the scope of her parenting-consultant authority under both the dissolution decree and the parents' contract with Johnson. It also found that neither parent had appealed the May 31 decision within the required 20–day appeal deadline established in the decree. VanGelder failed to provide the district court with Johnson's September 26 decision, and the district court found that any challenge to that decision would likewise have been untimely. VanGelder also failed to provide a copy of Johnson's November 22 decision, so the district court held that he failed to carry his burden of proof on his motion to vacate that decision. It denied VanGelder's remaining motions and ordered the parties to abide by Johnson's May 31 decision.

VanGelder sent Johnson a letter on December 23, 2010, telling her that her services were terminated "effective immediately." Johnson ignored the letter and continued to act as a parenting consultant. VanGelder sued Johnson in March 2011, alleging negligence and breach of contract. Johnson moved the district court for summary judgment. The district court granted Johnson's motion. It held that Johnson acted within the scope of parenting-consultant duties directed by the dissolution decree, that she had performed a quasi-judicial function under the decree, and that she is entitled to quasi-judicial immunity.

VanGelder appeals.

### ISSUE

Did the district court correctly determine that Johnson is entitled to quasi-judicial immunity for alleged damages arising from her parenting-consultant decisions?

### ANALYSIS

▆▆▆ VanGelder argues that the district court erred by holding that Johnson

is entitled to quasi-judicial immunity and by granting her motion for summary judgment. In an appeal from summary judgment, we review de novo whether a genuine issue of material fact exists and whether the district court erroneously applied the law. *Peterka v. Dennis,* 764 N.W.2d 829, 832 (Minn.2009). We view "the evidence in the light most favorable to the party against whom summary judgment was granted," accepting as true the factual allegations made by that party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Whether immunity exists is a question of law, which we also review de novo. *Peterka,* 764 N.W.2d at 832. But we defer to the district court's credibility determinations and review its findings of fact for clear error. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988).

Judicial immunity protects judges from liability for damages arising from acts they perform in the exercise of their judicial authority, and the doctrine of quasi-judicial immunity "extends to persons who are integral parts of [the judicial] process." *Sloper v. Dodge,* 426 N.W.2d 478, 479 (Minn.App.1988). Quasi-judicial immunity has been extended to protect public defenders, court-appointed guardians ad litem, therapists, and arbitrators. *See Tindell v. Rogosheske,* 428 N.W.2d 386, 387 (Minn.1988) (guardian ad litem); *Dziubak v. Mott,* 503 N.W.2d 771, 775–76 (Minn.1993) (public defender); *Myers Through Myers v. Price,* 463 N.W.2d 773, 775–76 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991) (therapist); *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 376–77 (Minn.1989) (arbitrator).

VanGelder argues that quasi-judicial immunity shields only officials who were directly appointed by a court order that specifically identifies them, citing *Zagaros* and *Sloper* for support. The argument is not persuasive.

It is true that in *Zagaros v. Erickson* we "decline[d] to formally extend judicial immunity to custody evaluators without court appointment." 558 N.W.2d 516, 523 (Minn.App.1997), *review denied* (Minn. Apr. 17, 1997). But the declination was not precedential since we simply did not need to reach the issue. *See id.* Basing the decision on other grounds, we concluded, "[f]or now, the doctrine of judicial immunity protects those who are appointed by the court to perform judicial or quasi-judicial functions." *Id.* In *Sloper v. Dodge,* we concluded that the district court erred by concluding that a criminal defendant's therapist was entitled to quasi-judicial immunity. 426 N.W.2d at 479. We did so because the only evidence that the therapist had been court-appointed was his own affidavit, which was contradicted by the express terms of the defendant's sentence. *Id.*

Neither of those cases supports VanGelder's argument. The dissolution decree here expressly required the parties to engage a parenting consultant when they reached an impasse in their parenting or parenting-time decisions. It implicitly endowed the parenting consultant with decision-making authority. The consulting agreement mirrored the parenting-consultant provisions of the dissolution decree, and Johnson provided uncontradicted testimony that she worked with VanGelder's attorney to incorporate the terms of the decree into the agreement so that the defined scope of her duty was the same under the two documents. VanGelder's attorney told Johnson that a separate court appointment was unnecessary because there had been a "complete appointment" by the dissolution decree. Because the dissolution decree expressly directed the parties to engage a parenting consultant, who turned out to be Johnson, we reject VanGelder's claim that his relation-

ship with Johnson was "purely private and contractual" and not sufficiently official to trigger immunity.

We are not persuaded otherwise by our decision not to apply quasi-judicial immunity in *Koelln v. Nexus Residential Treatment Facility*, 494 N.W.2d 914, 920 (Minn. App.1993), *review denied* (Minn. Mar. 22, 1993). In *Koelln*, the district court civilly committed an individual to a residential treatment center as a psychopathic personality. *Id.* at 916–17. The patient escaped and sexually assaulted a woman, who sued the center for damages. *Id.* at 917. We held that the center was not entitled to quasi-judicial immunity because the patient escaped after the civil commitment process was completed and the center's actions were not an integral part of the judicial process. *Id.* at 921.

By contrast, here, Johnson's role as parenting consultant was part of the judicial process. It was required by the court to address the parties' parenting disputes related to the dissolution decree—the kind of postdissolution disputes that district courts routinely face. And Johnson's decisions were binding on the parties by virtue of the dissolution decree. Those decisions modified the parents' parenting-time schedules, resolved parenting-time disputes, attempted to reduce the acrimony in the relationship between the parents, and restricted A.V.'s access to inappropriate material. Johnson was serving a quasi-judicial function because these were the kind of decisions courts ordinarily make in parenting disputes. *See* Minn. Stat. §§ 518.175, subd. 5 (granting authority for district court modification of parenting-time schedules); 518.131, subd. 1 (granting district court authority to require parents to perform acts that will "protect the parties or their children from physical or emotional harm") (2010). Johnson is therefore entitled to quasi-judicial immunity, at least

to the extent that her judicially-authorized engagement addressed the issues for which the parties were required by the decree to engage her mediator and arbitrator services.

■ We add that VanGelder's argument is also barred by collateral estoppel. Johnson pleaded both collateral estoppel and res judicata defenses in her answer and argued a res judicata defense to the district court. Collateral estoppel is included within res judicata. *See Hous. & Redevelopment Auth. of City of St. Paul v. Alexander*, 437 N.W.2d 97, 100 (Minn.App. 1989) ("[C]ollateral estoppel is a distinct and important aspect of res judicata."), *review denied* (Minn. May 24, 1989). And although the district court's order did not explicitly address collateral estoppel or res judicata, we may affirm its decision on any basis supported by the record. *Kahn v. State*, 289 N.W.2d 737, 745 (Minn.1980).

■ VanGelder argues that he presented evidence that Johnson's decisions exceeded the scope of her authority under the dissolution decree, creating a genuine issue of fact as to whether all of Johnson's decisions should be immunized. In doing so, VanGelder supports his breach of contract claim on the same exceeding-authority theory that he relied on when he asked the district court in his custody case to restore parenting time and remove Johnson as parenting consultant. In that case the district court held that Johnson had not exceeded her authority in the May 2010 decision, that VanGelder had failed to challenge the September 2010 decision within the 20–day time limit, and that he had waived his right to challenge the November 2010 decision by failing to provide a copy of it to the court.

■ The purpose of the collateral estoppel doctrine is to prevent parties from "relitigating in subsequent actions identical

issues that were determined in a prior action." *Heine v. Simon,* 702 N.W.2d 752, 761 (Minn.2005). A party is collaterally estopped from raising an issue if each of four criteria is met:

> (1) the issues in the prior and present adjudication must be identical; (2) there must have been a final adjudication on the merits; (3) the estopped party must have been a party or in privity with a party to the prior adjudication; (4) and the estopped party must have been given a fair and full opportunity to be heard on the adjudicated issue.

*Haavisto v. Perpich,* 520 N.W.2d 727, 731 (Minn.1994). Here VanGelder presents the same exceeding-authority issue that he raised in his motion to remove Johnson in his dissolution case. The district court in that matter provided a final adjudication of the issue when it ruled that Johnson had not exceeded her authority in her May 2010 decision. It also rejected VanGelder's similar challenge to Johnson's September and November 2010 decisions. Collateral estoppel applies to waivers of a right to appeal a decision in the same manner that it applies to determinations of issues decided expressly. *See Kronzer v. First Nat'l Bank of Minneapolis,* 305 Minn. 415, 428–29, 235 N.W.2d 187, 195 (Minn.1975) (holding that when a party waived its right to challenge the validity of an amendment to a will in a stipulation, it was collaterally estopped from raising the challenge later); *see also In re Bush's Estate,* 302 Minn. 188, 208–09, 224 N.W.2d 489, 501–02 (Minn.1974) (holding that failure to appeal a stipulation made it binding regardless of whether a party affirmatively consented to it). VanGelder is a party in both proceedings. He knew of the 20–day time limit and challenged one of Johnson's decisions within that period. It is apparent that he was given a full and fair opportunity to litigate the issue regardless of whether he diligently availed himself of it. He is therefore estopped from relitigating his claim here.

## DECISION

Johnson is entitled to quasi-judicial immunity for the decisions she made within the scope of the decree's authorization. We do not decide whether some of her decisions were beyond the scope of the decree and whether this disqualifies them from immunity; VanGelder's failure to challenge those decisions as too broad to be enforced precludes his claim that they are too broad for immunity. We therefore affirm the district court's grant of Johnson's motion for summary judgment on the basis of her quasi-judicial immunity.

**Affirmed.**