*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0225**

County of Hennepin,
Respondent,

vs.

Christina Elizabeth VonderHaar,
Appellant,

James Mark Hedquist,
Respondent.

**Filed November 18, 2024
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-PA-FA-20-175

Kathryn M. Lammers, Kyle L. Prouty, Heimerl & Lammers, LLC, Minneapolis, Minnesota
(for appellant/cross-respondent Christina VonderHaar)

Valeria Camboni Miller, Camboni Miller Law Office, LLC, St. Paul, Minnesota (for
respondent/cross-appellant James Hedquist)

        Considered and decided by Bjorkman, Presiding Judge; Wheelock, Judge; and

Jesson, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**BJORKMAN**, Judge

Appellant Christina Elizabeth VonderHaar (mother) and respondent James Mark Hedquist (father) both challenge the district court's order awarding mother sole legal and physical custody and awarding father parenting time. Mother argues that the district court abused its discretion (1) by admitting the parties' psychological-evaluation reports, admitting testimony from a custody evaluator who did not complete a report, and refusing to take judicial notice of father's prior divorce proceeding; (2) in its award of parenting time to father; and (3) by subjecting her to alcohol monitoring during parenting time. By notice of related appeal, father argues that the district court abused its discretion by admitting evidence of his divorce and by awarding sole legal and physical custody to mother. We affirm.

## FACTS

Mother and father were in a romantic relationship but never married. They have two joint children, twin boys born in October 2014. The children have always lived with mother. The parents have a volatile history punctuated by instances of domestic abuse on both sides.

In spring 2020, respondent Hennepin County (the county) initiated this action seeking to establish father's paternity.[1] The district court adjudicated father's paternity that December. Thereafter, progress toward a resolution of custody and parenting time

---

[1] Because this appeal does not concern child support or any other matter for which the county is responsible, the county is not participating in this appeal.

moved slowly, marked by several changes in counsel for each parent and recalcitrant behavior from both.

In February 2021, the district court ordered the parents to participate in a custody and parenting-time evaluation, to be completed by June 23. On June 22, evaluator Jason Chinander wrote to the district court to say that he was closing the file because of the parents' "lack of cooperation." The district court released Chinander from his duty to complete the evaluation.

In July 2021, the district court noted Chinander's concerns that both parents are "mentally and emotionally unstable" and ordered the county to arrange for psychological evaluations of both parents. The court later learned that the county was not taking family court referrals but reiterated that psychological evaluations of the parents are "necessary," and the parents agreed to select a private evaluator. After they settled on Michelle Millenacker, Psy.D., the court ordered the parents to undergo psychological evaluations with Dr. Millenacker and ordered Dr. Millenacker to submit her findings to the court. Each parent met with Dr. Millenacker multiple times, and she filed a report for each.

In the meantime, the district court awarded father temporary supervised parenting time. Mother refused to cooperate with parenting time for months, so father was unable to exercise parenting time until early July 2022. According to staff at the center supervising the visits, the first one seemed to go well but subsequent visits deteriorated. The children repeatedly refused to attend and disparaged father, and mother did not encourage them to attend. After three canceled visits, the center ended its supervisory services. Father was thereafter unable to exercise parenting time.

During a three-day trial in February and March 2023, the district court received testimony from both parents; each requested sole legal and physical custody of the children and substantial restrictions on the other's parenting time. The court also heard from several other witnesses, including Chinander. Dr. Millenacker did not testify, but the district court received her reports as the direct testimony of a court-appointed expert, over mother's objection.[2] The district court also received extensive additional documentary and video evidence, including records from the center that supervised father's visits with the children, chemical-health assessments for both parents, numerous police reports, and videos of the parents' hostile interactions, often in front of or involving the children.

In a July 2023 order, the district court made express credibility determinations—particularly emphasizing that neither parent was "entirely credible"—and findings as to the children's best interests and the presumption in favor of each parent receiving at least 25% parenting time. Based on those findings, the court awarded mother sole legal and physical custody, subject to father's parenting time. Its order provides for two parenting-time phases. In phase one, through the end of 2023, father has up to four hours of weekly supervised parenting time and must participate in six reunification-therapy sessions. In phase two, starting on January 4, 2024, regardless of what happens with reunification therapy, father has unsupervised parenting time every other week from Thursday evening

___

[2] The district court admitted the reports based on its September 2022 order establishing trial procedures, in which it provided that "direct examination of all experts must take place by the expert's pre-marked written report," and any party who wants to cross-examine a court-appointed expert must timely subpoena the expert. Mother did not subpoena Dr. Millenacker.

to Monday morning. The order also requires both parents to refrain from using alcohol or other nonprescription chemicals during parenting time and to participate in alcohol monitoring before and during their parenting time; they may file a motion to discontinue testing after one year with no positive results.

Both parents moved for amended findings. The district court corrected clerical errors and made minor modifications but otherwise denied the motions. Mother subsequently moved to suspend indefinitely the transition to phase two unsupervised parenting time. The district court denied the indefinite suspension but delayed the start of unsupervised parenting time by one month, to February 4, 2024, to allow for additional reunification therapy and supervised parenting time.

Mother filed this appeal, and father filed a notice of related appeal.[3]

## DECISION

**I.      The district court did not abuse its discretion in its evidentiary rulings.**

We review a district court's evidentiary rulings for an abuse of discretion. *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *rev. denied* (Minn. Oct. 24, 2001). The party asserting evidentiary error is entitled to relief only if they demonstrate that the error was prejudicial. Minn. R. Evid. 103(a); *Olson ex rel. A.C.O. v. Olson*, 892 N.W.2d 837,

---

[3] On October 21, 2024, mother filed a motion asking us to review the district court's order denying her motion to stay enforcement of the orders underlying her appeal. Because this opinion makes any such review unnecessary, we deny the motion as moot. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 291 (Minn. App. 2007) (recognizing that an issue may be dismissed as moot if "an event occurs which makes a decision on the merits unnecessary").

841 (Minn. App. 2017). "An evidentiary error is prejudicial if it might reasonably have . . . changed the result of the trial." *George v. Est. of Baker*, 724 N.W.2d 1, 9 (Minn. 2006).

### A. Psychological-Evaluation Reports

Mother argues that the district court abused its discretion by admitting Dr. Millenacker's reports because Dr. Millenacker was not a court-appointed expert and, even if she was, mother is entitled to cross-examine such an expert.[4] We disagree. A district court may appoint an expert witness of its own selection or one "agreed upon by the parties." Minn. R. Evid. 706(a). Its appointment order need not reference rule 706. *Peterka v. Dennis*, 764 N.W.2d 829, 833 (Minn. 2009) (recognizing a witness as an expert under rule 706 when court appointment was "the practical effect of the court's order, as well as the conduct of the parties and [the expert]"). The district court (1) ordered the parents to undergo psychological evaluations with Dr. Millenacker, (2) recognized that it was doing so to substitute for a county evaluator and based on the parents' agreement, and (3) ordered Dr. Millenacker to report her findings to the district court. The parents and the doctor complied with the order. While the order may not have referenced rule 706, it had the practical effect of making Dr. Millenacker a court-appointed expert. And while such an expert "shall be subject to cross-examination by each party," Minn. R. Evid. 706(a), mother identifies nothing in the language of that rule or any other authority precluding a

---

[4] Mother also argues that, because Dr. Millenacker was not a court-appointed expert, foundation was required for her reports. But she does not contend that foundation beyond the appointment order is required for the admission of a court-appointed expert's report or identify any authority supporting such a contention.

district court from requiring the party seeking that cross-examination to subpoena the expert, as the district court did here.

Moreover, mother has not demonstrated that the admission of the reports caused her prejudice. Mother obtained the custody result she requested—sole legal and physical custody of the children—so any claim of prejudice must relate to the parenting-time decisions she challenges. Based on our close review of the record, we see no basis for concluding that excluding Dr. Millenacker's reports would have led to a different parenting-time outcome. In particular, to the extent the court's parenting-time decisions were influenced by Dr. Millenacker's assessment that mother is aggressive and belligerent and underreports her concerning and problematic alcohol use, the district court also noted the extensive additional evidence of mother's behavior and alcohol use in the record, including numerous police reports and testimony from Chinander, a former nanny for the children, and a police officer familiar with mother. Indeed, part of mother's argument against admitting the reports at trial was that they are cumulative, which underscores the lack of prejudice from admitting them. Mother is not entitled to relief based on the admission of Dr. Millenacker's reports.

### B. Chinander's Testimony

Mother asserts several challenges to the district court's admission of Chinander's testimony. She first argues that it was improper for him to testify because he did not complete a custody evaluation, yet the district court relied on his testimony to "manufacture a custody evaluation out of testimony alone." The record defeats this argument. The district court expressly stated that it did not expect Chinander to offer any recommendation

7

as to custody; Chinander confirmed that he would not do so. Instead, he testified about his interactions with and impressions of the parents, which are matters within his personal knowledge. *See* Minn. R. Evid. 602 (requiring witnesses to testify from "personal knowledge").

Mother also contends that, during his testimony, Chinander improperly relied on notes that are not in the record. We disagree. Our careful review of the transcript reveals two instances in which Chinander referred to notes he prepared or records he reviewed. But there is no indication that he accessed or relied on any such materials during his testimony.

Finally, mother argues that Chinander should have been excluded as an incompetent witness because he described his recollection of a "whole time period" that he was asked about as "fuzzy" because of medical treatment he was undergoing at that time. But mother omits several significant details: Chinander explained that the "fuzzy" period coincided with when he spoke with Dr. Millenacker about the parents, he did not testify about his conversations with Dr. Millenacker, and he expressly confirmed that his thinking was not similarly affected at the time he interacted with the parents. As such, there was no reason for the district court to doubt his competence to testify about his personal experiences with the parents.

### C. Father's Prior Divorce Proceeding

Both parents challenge the district court's management of evidence related to father's prior divorce proceeding. During the first day of mother's cross-examination of father, the district court permitted her, over father's relevancy objection, to question father

8

about that proceeding. When she returned to the subject the next day, she asked the court to take judicial notice of an order in the divorce proceeding denying father's motion to modify parenting time; the district court denied the request.

Father now argues that the district court abused its discretion by permitting the questioning about his prior divorce proceeding because it was improper character evidence in violation of Minn. R. Evid. 404(b) and any relevance it had was outweighed by unfair prejudice under Minn. R. Evid. 403. Because father objected to the evidence solely based on relevance, he has forfeited any argument as to these other grounds. *See* Minn. R. Evid. 103(a) (precluding a challenge to a ruling admitting evidence absent a timely, specific objection). Moreover, the record reveals that the district court conscientiously circumscribed the evidence, interjecting several times during the questioning to ensure its continued relevance and ultimately cutting it off sua sponte based on rule 403. On this record, father has not demonstrated reversible error by the district court in permitting brief questioning about his divorce.

Mother, in turn, contends the district court abused its discretion by declining to take judicial notice of the "divorce proceeding." "A district court's decision whether to take judicial notice of proffered facts is an evidentiary ruling that we review only for abuse of discretion." *Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 71 (Minn. App. 2015), *rev. denied* (Minn. June 30, 2015). Mother argues that father's conduct toward his former spouse is relevant to his credibility. But the district court had already heard testimony from him on that subject, and it explained that another court's determination in a separate proceeding that father was not credible in his claimed desire for more parenting

9

time has no bearing on this proceeding. Because mother does not identify any flaw in the district court's reasoning, she has not demonstrated an abuse of discretion.

**II.     The district court did not abuse its discretion by awarding mother sole legal and physical custody.**

The "guiding principle" in deciding custody is the children's best interests. *Thornton v. Bosquez*, 933 N.W.2d 781, 789 (Minn. 2019) (quotation omitted). In determining the children's best interests, a district court "must consider and evaluate all relevant factors," including 12 statutorily enumerated factors. Minn. Stat. § 518.17, subd. 1(a) (2022). It may not rely on any single factor "to the exclusion of all others." Minn. Stat. § 518.17, subd. 1(b)(1) (2022). The court also must use a rebuttable presumption that joint legal or physical custody is not in the children's best interests if domestic abuse has occurred between the parents. Minn. Stat. § 518.17, subd. 1(b)(9) (2022). The district court has "broad discretion" in custody matters. *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). We will not reverse a custody award unless the district court abuses that discretion "by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

The district court determined that the parents' history of domestic abuse "strongly supports" an award of sole custody. And it made findings as to each of the 12 best-interests factors, determining that (1) many factors do not favor either parent as custodian, (2) concerns about mother's mental and chemical health favor an award to father, and (3) mother's role as primary caretaker and the continuity of maintaining that arrangement

favor an award to mother. Based on these findings, the court awarded mother sole legal and physical custody.

Father acknowledges that awarding sole legal and physical custody to one parent was appropriate in light of the parents' history of domestic abuse. But he contends that the record does not support the district court's selection of mother as the custodial parent.

He first asserts that the court gave insufficient weight to evidence of mother's "alcohol abuse and mental health issues," and failed to consider evidence that, because of these issues, mother "does not focus on the children's best interests." We are not persuaded. The district court was required to consider the "physical, mental, or chemical health issue[s] of a parent that affects the child's safety or developmental needs," Minn. Stat. § 518.17, subd. 1(a)(5), and it did just that. As to mother, the court noted the extensive record evidence of mother's alcohol abuse and mental-health challenges and expressed concern that "without drastic intervention through therapy and sobriety," her behavior is likely to affect the children. And as noted above, the court found that this factor favors an award of custody to father. But it also noted similar concerns as to father, found that other considerations favor an award of custody to mother, and explained that father did not demonstrate that "he is a *better* parent to receive an award of legal and physical custody." In short, father has not demonstrated that the district court abused its discretion in considering mother's chemical and mental health as they pertain to custody.

Father also challenges the district court's assessment of the "history and nature of each parent's participation in providing care for the child[ren]." Minn. Stat. § 518.17, subd. 1(a)(6). He argues that the court's analysis was deficient because it failed to make

11

detailed findings as to each parent's role in preparing the children's meals, bathing them, addressing their medical care, disciplining them, and the various other indicators of a primary caretaker delineated in *Pikula v. Pikula*, 374 N.W.2d 705, 713 (Minn. 1985). But we discern no need for the district court to make findings parsing out the caretaking duties because the record so thoroughly establishes that mother has always been the children's primary caretaker. She was the children's only legally recognized parent during the first six years of their lives (until the district court adjudicated father's parentage in December 2020). The children have lived only with mother, and their whole lives are centered around mother and her home. Father acknowledged as much in his testimony, agreeing that awarding him custody would be a "big change" for the children. On this record, we see no abuse of discretion in the decision to award mother sole legal and physical custody.

III. **The district court did not abuse its discretion in determining the amount and terms of parenting time.**

The children's best interests are also the driving factor when establishing parenting time, and a district court looks to the same 12 best-interests factors as in custody disputes. Minn. Stat. § 518.17, subd. 1(a). A district court has "broad discretion" in determining parenting-time issues, and we will not reverse absent an abuse of that discretion. *Suleski v. Rupe*, 855 N.W.2d 330, 334 (Minn. App. 2014). We review the district court's factual findings for clear error and defer to its credibility determinations. *Hagen v. Schirmers,* 783 N.W.2d 212, 215 (Minn. App. 2010).

12

### A. Father's Parenting Time

Mother challenges the district court's award of parenting time to father, arguing that (1) the district court's findings as to several best-interests factors are flawed and (2) the court abused its discretion by not requiring father to successfully complete reunification therapy before starting supervised and then unsupervised parenting time. We address each argument in turn.

### 1. Best-Interests Findings

The district court's findings as to the 12 statutory best-interests factors also informed its analysis of parenting time, and it determined that none of the factors rebut the presumption in Minn. Stat. § 518.175, subd. 1(g) (2022), that each parent is entitled to at least 25% parenting time.

Mother takes issue with the district court's findings as to four of the best-interests factors, beginning with the children's preference. A district court must consider a child's "reasonable preference," if it "deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference." Minn. Stat. § 518.17, subd. 1(a)(3). In considering this factor, the district court found that any preference the children have is not independent and reliable because the records from the parenting-time supervisor show that mother "influenced" them to "exhibit disdain" for and "distance themselves" from father. Mother contends these findings are clearly erroneous and inadequate because the district court made no findings about the lack of contact between the children and father in recent years or even "what the children's preferences were." But the challenged order as a whole demonstrates that the district court was aware that the children are not accustomed to

13

spending time with father. And the records that the court cited and discussed in detail amply support its finding that mother has influenced the children's preference. On this record, the district court did not abuse its discretion by finding that the children's preference "cannot be considered" as part of its best-interests analysis.

Second, mother argues that the district court gave inadequate weight to the evidence of the parents' mental and chemical health. *See* Minn. Stat. § 518.17, subd. 1(a)(5). Specifically, she contends the district court failed to account for her testimony that she suffers from PTSD and anxiety because of her relationship with father. We disagree. The district court found that both parents' testimony was largely not credible and specifically expressed doubt about mother's testimony as to diagnoses not supported by an expert. Moreover, mother does not explain how her claimed diagnoses should have influenced the district court's determinations as to the amount and conditions of father's parenting time.

Third, mother challenges the district court's findings as to "the history and nature of each parent's participation in providing care for the child[ren]." Minn. Stat. § 518.17, subd. 1(a)(6). Mother again contends the district court failed to "give adequate weight" to evidence that father has had little contact with the children in recent years. We are not persuaded. The district court expressly found that mother has been the children's primary caretaker and noted that they exhibit "signs of estrangement" from father. As noted above, the court's findings as a whole reflect its awareness that father has not cared for the children in some time and will need to build a relationship with them through reunification therapy and supervised visitation. Mother identifies no authority for the proposition that a parent's lack of history providing care for a child necessarily weighs against a parent receiving

14

parenting time. To the contrary, Minnesota law presumes that each parent is entitled to at least 25% parenting time, Minn. Stat. § 518.175, subd. 1(g), and that it is in the children's best interests to foster relationships with both parents, Minn. Stat. § 518.17, subd. 1(b)(2) (2022). Because the district court considered and made well-supported findings on this factor as part of a comprehensive analysis of what parenting-time arrangement will serve the children's best interests, we see no abuse of discretion.

Finally, mother challenges the district court's consideration of "the benefit to the child[ren] in maximizing parenting time with both parents and the detriment to the child[ren] in limiting parenting time with either parent." Minn. Stat. § 518.17, subd. 1(a)(10). She contends the court "overlooked [father's] overall absence from the children's lives" and that, because of this "estrangement," it would be in the children's best interests to minimize father's parenting time. But the district court accurately noted that this factor focuses on the benefits from maximizing parenting time, not a benefit from minimizing a particular parent's time with the children. The district court also expressly and repeatedly noted father's inconsistent and difficult contact with the children; it simply attributed those issues substantially to mother's influence on the children and her failure to support father's parenting time, rather than to father. Mother has not demonstrated that the district court abused its discretion in its consideration of this best-interests factor.[5]

---

[5] Mother also contends the evidence of the children's "lack of a relationship" with father "supports findings" restricting his parenting time to below the presumptively appropriate 25% mark. *See* Minn. Stat. § 518.175, subd. 1(g). This argument essentially asks us to reweigh the evidence, which is "inconsistent with [our] abuse-of-discretion standard of review." *Bayer v. Bayer*, 979 N.W.2d 507, 513 (Minn. App. 2022).

### 2. Reunification Therapy and Supervision

Mother argues that the district court abused its discretion by awarding father unsupervised parenting time without requiring that he first successfully complete reunification therapy and supervised parenting time. She contends it is contrary to the children's best interests not to have "a review mechanism" to ensure the success of reunification therapy and supervised parenting time, and that the district court based its refusal to impose such a mechanism on clearly erroneous findings as to her conduct. This argument is unavailing.

The district court agreed that it is in the children's best interests "to complete reunification therapy and supervised parenting time." But it did not place "a firm start-date for unsupervised parenting time," explaining that mother's conduct poses a barrier to that process. It highlighted mother's efforts to undermine father's supervised parenting time and alienate him from the children, as reflected in the parenting-time records. It also noted mother's own statements showing her hostility to father having a relationship with the children, including a text message she sent him saying: "I'll kill the boys if you ever try to take them." This record convinces us that the district court's refusal to condition the transition to unsupervised parenting time on successful completion of reunification therapy and supervised parenting time, which would "lend [mother] control over Father's path to parenting time," was not an abuse of discretion.

### B. Mother's Parenting Time

Mother also challenges the district court's decision to impose an alcohol-testing requirement on her parenting time. She contends the decision rests on flawed factual

findings that misrepresented her as having a 2015 conviction of driving while impaired (DWI), overemphasized incidents involving chemical use from before the children's birth, and misrepresented police reports. We are not persuaded. The district court found that mother's denial of any problems with alcohol is "contrary to" the record. Our careful review of the record reveals ample support for this finding: Mother admitted to a 2014 DWI conviction; numerous exhibits document her pre-children history of hospitalization, disruptive or violent behavior, and family concern related to alcohol and chemical use; police reports from throughout the children's lives document alcohol- or other chemical-related police contacts with mother; and a former nanny and an officer who has had multiple contacts with mother both testified about interacting with mother while she exhibited signs of intoxication, including while the children were in her care. This evidence supports the district court's finding that alcohol continues to play a large role in mother's life, despite her insistence to the contrary.

Mother nonetheless asserts the district court abused its discretion by requiring her to undergo alcohol testing to ensure that she is sober during her parenting time. She acknowledges that the findings "support the directive" that she must be sober when caring for the children but contends the record does not demonstrate that chemical testing advances the children's best interests. This argument is not convincing. As discussed above, ample evidence supports the district court's findings that mother continues to have a problematic relationship with alcohol, including when she is caring for the children, and is not a reliable reporter regarding her alcohol use. The testing mandate merely ensures that mother complies with the undisputedly appropriate directive that she remain sober

17

during parenting time.  Additionally, the testing mandate applies to both parents, and they can have the mandate removed after only a year if they have no positive tests.  We discern no abuse of discretion in this targeted and balanced mandate to ensure the children's safety while in their parents' care.[6]

**Affirmed.**

---

[6] Mother also purports to challenge the district court's denial of her motion for amended findings.  But she advances no arguments distinct from the various assignments of error discussed above.  Because those arguments fail, so too does this one.